# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# (DURHAM DIVISION)

| | |
|---|---|
| In re Michael B. Nifong, <br><br> Debtor. | Case No. 08-80034 <br><br> Chapter 7 |

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR A STAY OF THE ADVERSARY PROCEEDING**

Plaintiffs David F. Evans, Collin Finnerty, and Reade Seligmann hereby submit this Supplemental Brief in support of their Motion for Relief from the Automatic Stay and for a Stay of the Adversary Proceeding.

1. At the April 24, 2008 hearing on Plaintiffs' motion, the Court invited the parties to submit supplemental briefs on the question of whether Plaintiffs' claims against Michael B. Nifong in the District Court action (*Evans et al. v. City of Durham et al.*, No. 1:07CV739 (M.D.N.C.)) are "personal injury tort . . . claims" within the meaning of 28 U.S.C. § 157(b) (2000 & Supp. V 2005).

2. The answer to the Court's question is clear: Plaintiffs' claims against Nifong are personal injury claims that must be decided in the District Court. The United States Supreme Court, the Fourth Circuit, and numerous other federal courts have expressly held that the particular civil rights claims that Plaintiffs have asserted against Nifong are personal injury claims. Likewise, the North Carolina courts have held that the

types of state-law causes of action that Plaintiffs have asserted against Nifong are considered personal injury claims. This Court therefore should lift the automatic stay and stay Plaintiffs' Adversary Proceeding so that these claims may be decided in the District Court.

## BACKGROUND

3. Plaintiffs' District Court complaint asserts claims against Nifong and several of his co-defendants for:

- violations of the federal civil rights laws, specifically 42 U.S.C. § 1983 (Causes of Action 1–4, 7) and 42 U.S.C. § 1985 (Causes of Action 8–10));
- malicious prosecution under North Carolina law (Cause of Action 13);
- obstruction of justice under North Carolina law (Cause of Action 14); and
- intentional infliction of emotional distress (IIED) under North Carolina law (Cause of Action 15).

*See* Ex. 1, Compl.[1]

4. The complaint alleges that Nifong and the other District Court defendants intentionally and wrongfully caused Plaintiffs' persons to be physically seized in violation of their individual rights. *See, e.g.*, *id.* ¶ 335 ("Plaintiffs were [unconstitutionally] seized."); *id.* ¶ 197 ("Plaintiffs were indicted and arrested" in the absence of probable cause). The complaint alleges that these intentional actions caused Plaintiffs to suffer "physical harm, emotional trauma, loss of liberty, loss of privacy . . . and irreparable harm to their reputations." *E.g.*, *id.* ¶ 336. And it alleges that they caused Plaintiffs to suffer "disabling emotional, mental, and physical harm." *Id.* ¶ 517.

---

[1] The District Court complaint is Exhibit 1 to Plaintiffs' motion.

# ARGUMENT

## I. Plaintiffs' Claims Against Nifong Are "Personal Injury Tort Claims" that Must Be Decided in the District Court.

### A. Personal Injury Claims Must Be Heard in the District Court.

5. If Plaintiffs' claims against Nifong are considered personal injury claims, they must be heard in the District Court. Under 28 U.S.C. § 157(b)(5), "personal injury tort . . . claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose." *See also* 28 U.S.C. § 157(b)(2)(5) ("personal injury tort . . . claims" are not core proceedings). Section 157(b)(2)(5) "flatly prohibits a bankruptcy court from adjudicating and liquidating personal injury claims even when brought within a dischargeability proceeding." *Leathem v. von Volkmar (In re von Volkmar)*, 217 B.R. 561, 565 (Bankr. N.D. Ill. 1998).

### B. Plaintiffs' Claims Are Personal Injury Claims.

6. The Bankruptcy Code does not define "personal injury tort," so courts interpreting § 157(b) have looked to the term's common meaning (as set forth in *Black's Law Dictionary*):[2]

> The term "personal injury tort" embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering.

---

[2] "A fundamental canon of statutory construction requires that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Ickes*, 393 F.3d 501, 504 (4th Cir. 2005) (applying the *Black's Law Dictionary* definition of "cargo" to interpret a federal statute).

3

*In re Thomas*, 211 B.R. 838, 840–41 (Bankr. D.S.C. 1997) (quoting *Black's Law Dictionary* 707 (5th ed. 1979)); *von Volkmar*, 217 B.R. at 565 (same); *Hansen v. Borough of Seaside Park (In re Hansen)*, 164 B.R. 482, 486 (D.N.J. 1994) (same); *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317 (Bankr. N.D.N.Y. 1988) (same).[3] Bodily injury is <u>not</u> required. *See, e.g.*, *Thomas*, 211 B.R. at 841; *Hansen*, 164 B.R. at 486; *Boyer*, 93 B.R. at 317.[4]

7. The common definition of "personal injury tort" also comports with Congress's purpose in § 157(b) to limit bankruptcy court jurisdiction over "claimants [who] [did] not voluntarily associate themselves with the debtor, [unlike] contracting parties." *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 n.3, 378 n.4 (Bankr. S.D. Tex. 1994) (citing legislative history). The "special status" afforded to personal injury claims "stems from Congress's recognition that most personal injury tort . . . victims stand in a somewhat different relationship with the bankruptcy debtor because they did

---

[3] The current edition of *Black's Law Dictionary* defines "personal injury" in the non-negligence context as "[a]ny invasion of a personal right, including mental suffering and false imprisonment." *Black's Law Dictionary* 802 (8th ed. 2004).

[4] A small number of courts have interpreted "personal injury" claims to be limited narrowly to cases of bodily harm, although most courts (including in North Carolina) have embraced the "majority view" that bodily harm need not be alleged. *See Moore v. Idealease of Wilmington*, 358 B.R. 248, 250 (E.D.N.C. 2006). "[T]he Code [is] silent on any repudiation or limitation of" the ordinary, broad definition of "personal injury tort," which is not limited to bodily harm. *See Boyer*, 93 B.R. at 318. "Certainly Congress could have used the term 'personal *bodily* injury' if it wished to specifically limit personal injury tort claims." *von Volkmar*, 217 B.R. at 566 (emphasis added). Even under the narrowest reading, however, Plaintiffs' claims against Nifong—based on the wrongful physical seizure of their persons and the causing of "disabling . . . mental, and physical harm" (Ex. 1, Compl. ¶ 517)—are personal injury claims.

4

not voluntarily enter into dealings with the debtor (and accept the risk of loss) in the same sense as traditional bankruptcy claimants." *von Volkmar*, 217 B.R. at 565 (quotation marks omitted).

8. Here, Plaintiffs obviously "did not voluntarily enter into dealings" with Nifong, and their claims against him plainly are for "civil wrongs or injuries" and seek recovery for "damage to an individual's person and . . . invasion of personal rights, such as . . . mental suffering." *E.g.*, *Hansen*, 164 B.R. at 486. Indeed, numerous courts have specifically held that the particular claims alleged against Nifong are personal injury claims under § 157(b).

### 1. Plaintiffs' Civil Rights Claims (Causes of Action 1-4, 7-10) Are Personal Injury Claims.

9. In *Wilson v. Garcia*, 471 U.S. 261 (1985), the United States Supreme Court held that "§ 1983 claims are best characterized as personal injury actions." *Id.* at 280. As the Court explained:

> Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is [the right] . . . of every "*person*" subject to the jurisdiction of any of the several States. The Constitution's command is that all "*persons*" shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

*Id.* at 277 (footnote omitted). Similarly, in *Almond v. Kent*, 459 F.2d 200 (4th Cir. 1972), the Fourth Circuit held that "every cause of action under § 1983 . . . results from 'personal injuries.'" *Id.* at 204.

10. The precise issue in both *Wilson* and *Almond* was whether § 1983 claims were subject to the statute of limitations for "personal injury" claims under state law. However, the holdings in both cases have been treated as "[b]inding precedent . . . that . . . civil rights claims should be treated as personal injury tort claims" under 28 U.S.C. § 157(b). *Moore v. Idealease of Wilmington*, 358 B.R. 248, 250 (E.D.N.C. 2006). As the district court explained in *Moore*, there is "no reason why the analysis [of *Wilson* and *Almond*] does not equally apply to whether these causes of action should be characterized as personal injury tort claims for purposes of section 157." *Id.* at 251–52. "It would be a strange anomaly to adopt the personal injury tort statute of limitations for civil rights actions and then hold such term under § 157(b)(2)(B) means something altogether different when non-core jurisdiction is at issue." *Id.* (quotation marks omitted); *see also, e.g.*, *Boyer*, 93 B.R. at 317–18 (applying *Wilson* and *Almond* under § 157(b)); *Thomas v. Adams (In re Gary Brew Enters. Ltd.)*, 198 B.R. 616, 618 (Bankr. S.D. Cal. 1996) (same); *Hansen*, 164 B.R. at 486 (applying *Wilson* under § 157(b)).

11. Consistent with *Wilson* and *Almond*, numerous courts have held that federal civil rights claims are personal injury claims within the meaning of § 157(b). "[C]ivil rights claims . . . constitute 'personal injury tort claims' under section 157." *Moore*, 358 B.R. at 250. A § 1983 "action is not a core proceeding which the bankruptcy court may

determine. Moreover, [it] is not a non-core proceeding that the bankruptcy court may hear under 28 U.S.C. § 157(c)(1). Congress has mandated trial in the district court." *Patterson v. Williamson (In re Patterson) ("Patterson I")*, 150 B.R. 367, 368 (E.D. Va. 1993) (citation omitted); *see also Patterson v. Williamson ("Patterson II")*, 153 B.R. 32, 33 (E.D. Va. 1993) ("the bankruptcy court was without jurisdiction to rule on the discovery matters, as those matters pertained to a non-core proceeding arising under 42 U.S.C. § 1983"); *Gary Brew*, 198 B.R. at 620 (§ 1981 claims are personal injury claims under § 157(b)); *Hansen*, 164 B.R. at 486 (§ 1983 claims are personal injury claims under § 157(b)); *Boyer*, 93 B.R. at 318 ("The Court must conclude that it has no jurisdiction to hear and determine causes of action . . . arising solely under the provisions of Title 42," including claims "under §§ 1983 and 1985") (collecting cases).

12. The factual allegations underlying Plaintiffs' civil rights claims (and their state-law claims) further emphasize the highly personal nature of Nifong's torts. Nifong is not alleged to have committed some commercial, business, or property-related tort against Plaintiffs. Rather, Nifong and the other District Court defendants caused Plaintiffs to be physically seized in violation of "the individual rights of the person" that the Constitution guarantees. *Wilson*, 471 U.S. at 277. As Plaintiffs' complaint alleges, Nifong's intentional wrongdoing caused Plaintiffs "physical harm, emotional trauma, loss of liberty, loss of privacy . . . and irreparable harm to their reputations." *E.g.*, Ex. 1, Compl. ¶ 336. The claims against him are personal injury claims.

### 2. Plaintiffs' Civil Rights Claims Also Require Consideration of "Other Laws of the United States" And So Belong in District Court.

13. Allowing Plaintiffs' civil rights claims to proceed in District Court is also consistent with 28 U.S.C. § 157(d), which makes withdrawal of the reference mandatory where "resolution of the proceeding requires consideration of both title 11 *and other laws of the United States* regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (2000) (emphasis added). Civil rights claims (Title 42, U.S.C.) in particular trigger mandatory withdrawal under § 157(d). *See Walton v. AG Credit, ACA (In re Walton)*, 158 B.R. 939, 942 (Bankr. N.D. Ohio 1993) ("Debtors' civil rights action is subject to mandatory withdrawal of reference to the District Court under 28 U.S.C. § 157(d)."); *Anthony v. Baker (In re Baker)*, 86 B.R. 234, 238 (D. Colo. 1988) ("[R]esolution of the plaintiff's [non-dischargeability] claims . . . will require substantial consideration of both 11 U.S.C. § 523(a)(6) and 42 U.S.C. § 1983. Thus withdrawal of reference is mandatory under 28 U.S.C. § 157(d)."). Indeed, the legislative history is clear that Congress in § 157(d) intended for cases involving "both title 11 issues and other Federal laws *including . . . civil rights laws*" to be heard in the District Court. *Contemporary Lithographers, Inc. v. Hibbert (In re Contemporary Lithographers)*, 127 B.R. 122, 125 (M.D.N.C. 1991) (emphasis added) (quotation marks omitted) (withdrawing the reference). Plaintiffs' claims belong in the District Court.[5]

---

[5] Nifong is wrong to imply that the Bankruptcy Court could decide Plaintiffs' civil rights and other claims in a quick and simple proceeding. Nifong's proposed Bankruptcy Court proceeding necessarily would require protracted testimony from numerous fact and

8

### 3. Plaintiffs' State-Law Claims (Causes of Action 13-15) Are Personal Injury Claims.

14. Federal courts also have held that the types of state-law claims that Plaintiffs have alleged against Nifong are personal injury claims under § 157(b):

    a. *Malicious prosecution (Cause of Action 13)*. Malicious prosecution "claims seek recovery for personal injuries [under § 157(b)] and cannot be liquidated or tried by this [Bankruptcy] Court." *von Volkmar*, 217 B.R. at 566–67; *see also Rizzo v. Passialis (In re Passialis)*, 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003) ("the term 'personal injury' [in § 157(b)] . . . may encompass . . . malicious prosecution").

    b. *IIED (Cause of Action 15)*. "[IIED] fits within the definition of personal injury tort for purposes of § 157(b)(5)." *Thomas*, 211 B.R. at 841–42. "When [IIED] stands alone as a separate and independent cause of action, the Court is without jurisdiction under 28 U.S.C. § 157(b)(5)." *In re Nosek*, No. 02-46025-JBR, 2006 WL 1867096, at *17 (Bankr. D. Mass. June 30, 2006); *see also Schepps*, 169 B.R. at 376 (IIED is a person injury claim under § 157(b)); *von Volkmar*, 217 B.R. at 566–67 (same).

---

expert witnesses, who then would have to testify again in the District Court trial of Nifong's fifteen co-defendants. A Bankruptcy Court trial also would require this Court to decide complex questions of federal civil rights law, including issues of absolute and qualified immunity, causation, and Fourth Amendment interpretation—issues that not only are routinely decided in District Court, but that are closely related to issues that must be decided in the District Court action against Nifong's co-defendants. Nifong's proposed second proceeding in this Court, largely duplicative of the District Court action, would be grossly wasteful and burdensome to the parties, witnesses, and the Court.

15. In addition, the North Carolina courts have long recognized that malicious prosecution and IIED are personal injury claims under North Carolina law. As early as 1840, the North Carolina Supreme Court referred to "malicious prosecution *or any other personal injury*." *Minga v. Zollicoffer*, 23 N.C. 278 (N.C. 1840), *available at* 1840 WL 764, at *2. And as recently as 2002, the North Carolina Court of Appeals recognized that IIED is "a common law tort action *alleging personal injury*." *Guthrie v. Conroy*, 567 S.E.2d 403, 408 (N.C. Ct. App. 2002) (emphasis added);[6] *see also Hugger v. Rutherford Inst.*, No. 5:00CV180-H, 2001 WL 114397, at *1 (W.D.N.C. Jan. 18, 2001) ("This is a personal injury action [for] intentional infliction of emotional distress."), *aff'd*, 63 F. App'x 683 (4th Cir. 2003) (per curiam); *Watson v. Dixon*, 532 S.E.2d 175, 177 (N.C. 2000) (referring to "personal injury as a result of the intentional infliction of emotional distress").

16. Consistent with the ordinary meaning of "personal injury," North Carolina insurance policies typically define the term to include malicious prosecution and IIED. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Morgan*, 556 S.E.2d 25, 29 (N.C. Ct. App. 2001) ("'[P]ersonal injury' [includes] . . . mental anguish and mental injury [and] [f]alse arrest [and] malicious prosecution."); *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 477

---

[6] Very few decisions exist on *any issue* involving the rarely pleaded civil tort of obstruction of justice (Cause of Action 14), and Plaintiffs know of no decision whether obstruction is a personal injury claim under § 157(b) or North Carolina law. However, there is no reason to treat obstruction differently than the closely related personal injury torts of malicious prosecution and false arrest, especially where, as here, the same underlying wrongdoing and harm are at issue. Moreover, obstruction plainly meets the broad definition of a personal injury tort set forth in the case law.

S.E.2d 59, 66 (N.C. Ct. App. 1996) ("'Personal injury' means . . . [f]alse arrest . . . or malicious prosecution."); *Graham v. James F. Jackson Assocs., Inc.*, 352 S.E.2d 878, 880 (N.C. Ct. App. 1987) ("Personal injury means . . . false arrest [or] malicious prosecution"); *Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 778 (N.C. Ct. App. 1984) ("'Personal injury' means . . . [f]alse arrest . . . [or] malicious prosecution [or] mental anguish and mental injury.").

17. In sum, Plaintiffs' federal and state-law claims against Nifong are personal injury claims that must be heard in the District Court. This Court should grant Plaintiffs' motion to lift the automatic stay so that the claims may be heard "in the district court in which the claim[s] arose." 28 U.S.C. § 157(b)(5); *see also Thomas*, 211 B.R. at 843 ("based upon the requirements of 28 U.S.C. § 157(b)(5), the automatic stay shall be lifted to allow the actions to proceed" in their original forum).

## II. There Are Independent Reasons To Lift The Automatic Stay.

18. Even leaving aside the question of whether the claims against Nifong are personal injury claims, there are several independent reasons that favor lifting the automatic stay.

19. First, the Bankruptcy Code is clear that intentional tortfeasors like Nifong are not eligible for the "fresh start" of a bankruptcy discharge. *See* 11 U.S.C. § 523(a)(6) (2000); *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998).

20. Second, the Fourth Circuit has made clear that when a court is asked to lift the automatic stay, the *debtor*'s interests are not even part of the equation. *See, e.g.*,

11

*Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). Rather, the "court must balance potential prejudice *to the bankruptcy debtor's estate* against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied"—here, the Plaintiffs. *Id*. (emphasis added). As to the first factor, because "[t]he purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation," *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir. 1982), where, as here, there is no estate to preserve, and Plaintiffs intend to collect only from liability insurance or post-bankruptcy assets, this factor is not implicated. *See Robbins*, 964 F.2d at 345. As to the second factor, it would substantially burden Plaintiffs if the requested relief were denied. The District Court will be resolving many complex issues arising under 42 U.S.C. §§ 1983 and 1985 in connection with Nifong's fifteen co-defendants, and the District Court will be overseeing discovery and a trial concerning Nifong's conduct even if Nifong is not a party there. If the automatic stay were not lifted, it would require a second set of proceedings, wholly duplicative of the District Court action, to decide separately the same legal and factual issues that will be decided in the District Court action, thereby forcing Plaintiffs—the victims of Nifong's and his co-conspirators' misconduct—to incur substantial additional costs that would be unnecessary if the stay were lifted. Therefore, the balance of factors weighs in favor of lifting the stay.

21. Finally, as in *In re Allred*, No. 03-11315C-13G, 2004 WL 3502655, at *3 (Bankr. M.D.N.C. Feb. 26, 2004), because "no issues in any of the claims . . . require

bankruptcy expertise," and "[a]llowing the claims to be pursued [in the other forum] . . . will result in a determination of the nature and amount of the Debtor's liability," the Court should lift the automatic stay so that Plaintiffs' claims against Nifong can be liquidated in the District Court action along with those against the other Defendants.

## CONCLUSION

22. For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order that relieves Plaintiffs from the automatic stay, and that stays Plaintiffs' Adversary Proceeding pending the outcome of the District Court action.

Dated: May 9, 2008　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　**WILLIAMS & CONNOLLY LLP**

　　　　　　　　　　　　　　　　By: ___s/ Charles Davant IV_____
　　　　　　　　　　　　　　　　　　Charles Davant IV (N.C. Bar #28489)
　　　　　　　　　　　　　　　　　　725 Twelfth Street, N.W.
　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　Tel. (202) 434-5000
　　　　　　　　　　　　　　　　　　Email cdavant@wc.com

　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*
　　　　　　　　　　　　　　　　*David F. Evans and Collin Finnerty*

　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　**RUDOLF WIDENHOUSE & FIALKO**

　　　　　　　　　　　　　　　　By: ___s/ David S. Rudolf_____
　　　　　　　　　　　　　　　　　　David S. Rudolf (N.C. Bar #8587)
　　　　　　　　　　　　　　　　　　312 West Franklin Street
　　　　　　　　　　　　　　　　　　Chapel Hill, NC 27516

Tel. (919) 967-4900
Email dsrudolf@rwf-law.com

*Attorneys for Plaintiff Reade Seligmann*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**(DURHAM DIVISION)**

| | |
|---|---|
| In re Michael B. Nifong, | Case No. 08-80034 |
| Debtor, | Chapter 7 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following:

James B. Craven III
340 West Main Street
P.O. Box 1366
Durham, NC 27702

*Attorney for Michael B. Nifong*


Michael D West
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402


I further certify that I caused the foregoing document to be served by first-class mail,

postage prepaid, to the following non CM/ECF participants:

Sara A. Conti
Trustee
P.O. Box 939

15

Carrboro, NC 27510

                                            Respectfully submitted,

                                            <u>s/ Charles Davant IV</u>
                                            Charles Davant IV (N.C. Bar No. 28489)
                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth Street, N.W.
                                            Washington, DC  20005
                                            (202) 434-5000 (tel.)
                                            (202) 434-5029 (fax)
                                            cdavant@wc.com

                                            *Attorney for Plaintiffs David F. Evans and*
                                                *Collin Finnerty*