IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN RE: )<br>)<br>MICHAEL B. NIFONG, )<br>)<br>Debtor )  | No. 1:08 CV 441<br><br>BRIEF OF DEBTOR/APPELLANT |

This memorandum in submitted on behalf of the debtor, Michael B. Nifong, in support of his appeal of the May 27, 2008 decision of the Bankruptcy Court, and pursuant to the order of July 15, 2008.

## BACKGROUND

The 162 page amended complaint filed in the District Court on December 11, 2007 in <u>Evans v. City of Durham</u>, No. 1:07 CV 739 (MDNC) obviously covers much ground. Suffice it to say it is not one of the form complaints held out as models in Rule 84, Federal Rules of Civil Procedure, and is heavy in perjorative adjectival use. The <u>first</u> of 22 asserted causes of action begins on page 98. There are 17 defendants, down at least one from the first edition. The 12 causes of action alleged against Mike Nifong (not all are) are as follows:

<u>No.1</u>. Malicious prosecution and seizure, under 42 U.S.C. 1983, the Civil Rights Act of 1871, against Nifong and six other defendants. The gist of this claim is that the actions of Nifong and the other six "were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights," Paragraph 334.

It must be noted that in Paragraph 336 the plaintiffs claim to have suffered physical injury, among other things. We suggest this is nothing more

1

than hyperbolic pleading, unworthy of belief without considerable more specificity. The plaintiffs also allege in Paragraph 334 that they incurred defense expenses in the criminal case. Upon information and belief, all defense costs were paid or reimbursed by a non-party Duke University alumnus.

<u>No. 2</u>. Concealment of evidence, also under 42 U.S.C. 1983, the Civil Rights Act of 1871, against Nifong and six others. This is essentially a claim of withholding potentially exculpatory material under <u>Brady v. Maryland</u>, 373, U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 15 (1963), premised upon reckless disregard, and with the same specious claim of physical injury.

<u>No. 3</u>. Fabrication of false evidence, also under 42 U.S.C. 1983, the Civil Rights Act of 1871, with the same specious claim of physical harm and the same reckless disregard as before.

<u>No. 4</u>. Making false public statements, under 42 U.S.C. 1983, the Civil Rights Act of 1871, against Nifong and eight others.

<u>No. 5</u>. Further violations of 42 U.S.C. 1983, the Civil Rights Act of 1871, against Nifong and eight others, referencing <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It should be noted that <u>Van de Kamp v. Goldstein</u>, No. 07-854, in which the Supreme Court granted certiorari on April 14, may have much to say on this particular cause of action.

<u>No. 7</u>. Conspiring in violation of 42 U.S.C. 1983, the Civil Rights Act of 1871, against Nifong and 14 others.

<u>No. 8</u>. Conspiracy and obstruction of justice, in violation of 42 U.S.C. 1985(2), the Civil Rights Act of 1861, against Nifong and 15 others. It should be noted that 42 U.S.C. 1985 is not one of the Reconstruction Civil Rights Acts, but was signed into law by President Lincoln on July 31, 1861, in the early days of the Civil War.

<u>No. 9</u>. Conspiracy in violation of 42 U.S.C. 1985(2), witness tampering, against Nifong and eleven others.

<u>No. 10</u>. Another conspiracy in violation of 42 U.S.C. 1985(2), against Nifong and 15 others.

<u>No. 13</u>. Malicious prosecution and conspiracy. The legal foundation for this largely repetitive count, i.e. state or federal law, is unspecified.

<u>No. 14</u>. Obstruction of justice and conspiracy, against Nifong and six others. The legal premise for this similarly repetitive count is also unspecified. The plaintiffs seem to be taking their claims under 42 U.S.C. 1983 and 42 U.S.C. 1985 and essentially repleading them without the statutory references.

<u>No. 15</u>. Intentional infliction of emotional distress and conspiracy, against Nifong and either others.

That leaves ten separate alleged causes of action in which Nifong is <u>not</u> named. The plaintiff's prayer for relief goes on for six pages, and the first 4.5 pages seek only equitable/injunctive relief, essentially the placing of the Durham Police Department in receivership for ten years. The prayer goes on to seek unspecified damages, compensatory and punitive, against all defendants, and of course court costs and counsel fees. The specious claim of physical

harm appears as well in the prayer for relief, and we suggest it may be subject to serious Rule 11 inquiry. We know not whether any of the other defendants have raised that issue.

Similarly we know not quite what to make of the claim for damages against Nifong in the complaint, for at oral argument on April 24 in the Bankruptcy Court the plaintiffs' counsel were pretty unequivocal in disclaiming any interest in the $3389 held by the Trustee for the benefit of the creditors. If they don't want money, what do they want? The Eighth Amendment precludes any recovery of a pound of flesh. The bulk of the prayer for relief we suggest really answers that question. They want control over the Durham Police Department.

## ISSUE

Is the complaint against the debtor a personal injury tort claims claim within the context of 18 U.S.C. 157(b)(5)?

## STANDARD OF REVIEW

The standard of review on this appeal is that findings of fact are received for clear error and conclusions of law are reviewed de novo. See In Re Kielisch, 258 F.3d 315, 319 (4th Cir. 2001) and In Re Meredith, ____ F.3d ____, No. 07-1509 (4th Cir. June 3, 2008).

## ARGUMENT

Zhang Fang claimed he had been wrongfully discharged from his employment at Atron, Inc. of Michigan because of race and ethnicity. His claim was founded on 42 U.S.C. 1981, the Civil Rights Act of 1870, as well as upon

4

Michigan law. After Fang was terminated, his former employer filed a Chapter 11 case. Fang asked the Bankruptcy Court to find that his cause of action against his former employer was a non-core proceeding as defined in 28 U.S.C. 157(b)(2)(B) and as such should be transferred to the District Court for trial pursuant to 28 U.S.C. 157(b)(5), i.e. that his 42 U.S.C. 1981 claim was a "personal injury tort" claim. In his claim, Fang sought $50,000 for humiliation and emotional distress, an additional $50,000 in punitive damages, and $11,088.46 plus in lost wages. The Bankruptcy Court in the Chapter 11 case held otherwise though, finding that Fang's claim under 42 U.S.C. 1981 was not a personal injury tort claim, In Re Atron Inc. of Michigan, No. 172 B.R. 541 (Bkcy. W.D. Mich. 1994).

The Michigan Court noted the relative scarity of pertinent case law, "unilluminating case law" at that, and the scarce legislative history. As noted about the Bankruptcy Amendments and Federal Judgeship Act of 1984, the "Act has a number of conflicting provisions and is confusing to say the least…No category of cases other than "core proceedings" is defined in any way, and there is no House or Senate report of any kind and no conference report," In Re White Motor Credit, 761 F.2d 270 (6th Cir. 1985).

In Re Interco, 135 B.R. 359 (Bkcy. E.D. Mo. 1991) involved an age discrimination claim, in which the plaintiff sought lost wages, retirement benefits, and damages for emotional distress for the debtor's alleged violations of not only Missouri law, but also the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. 621 et seq., and ERISA, 29 U.S.C. 1001 et seq. He

contended his ADEA claims were unliquidated personal injury tort claims and thus had to be heard, under 28 U.S.C. 157, in the District Court in St. Louis. The Bankruptcy Court held that an emotional distress claim is too far removed from the traditional personal injury torts, and that the focus should be on the traditional, plain meaning sense of personal injury, noting that only if the claim involved personal injury would 28 U.S.C. 157(b)(2)(5) be triggered. The Court could not believe the Congress intended "personal injury" to extend beyond physical injury. See also In Re Vinci, 108 B.R. 439 (Bkcy. S.D.N.Y. 1989) and Bertholet v. Harman,126 B.R. 413 (Bkcy. D.N.H. 1991).

In Perino v. Cohen, 107 B.R. 453 (Bkcy. S.D.N.Y. 1989), Cohen ran a restaurant in New York. Perino, a potential customer, was blind, but Cohen wouldn't let him in the restaurant with his dog. Perino wanted his discrimination claim, for actual and punitive damages, transferred to the District Court as a personal injury tort claim, but the Bankruptcy Court declined to do so, holding that Perino's claim was:

> Not a claim for a personal
> injury tort in the traditional,
> plain meaning sense of the words,
> such as a slip and fall, or a
> psychiatric impairment
> beyond mere shame and
> humiliation, 107 B.R. at 455

The Bankruptcy Court in Michigan, in Atron, then distinguished two contrary holdings, In Re Boyer, 93 B.R. 313 (Bkcy. N.D.N.Y. 1988) and In Re Smith, 95 B.R. 286 (Bkcy. N.D.N.Y. 1988) in that the civil rights claims in both cases arose from post-petition events and were thus entirely unrelated to the Chapter

6

7 cases. That of course is not our situation here. The Atron Court concluded by finding Bankruptcy Court jurisdiction to hear the 42 U.S.C. 1981 claim of Zhang Fang because he "has not alleged a personal injury tort as anticipated by Congress in drafting 28 U.S.C. 157(b)(2)(B) and 157(b)(5)." We of course suggest that conclusion similarly fits this case. Judge Stocks disagreed with Atron, having as he put it serious doubts that the Congress intended for "personal injury torts" as used in 28 U.S.C. 157(b) to mean only those torts that result from bodily injury.

In Demery v. City of Youngstown, 818 F.2d 1257 (6th Cir. 1997), the Court held that claims under 42 U.S.C. 1981 and 42 U.S.C. 1983, the Civil Rights Act of 1871, are personal injury claims <u>for purposes of the statute of limitations</u>. There was no bankruptcy context to the case, nor was bankruptcy law mentioned. To the same effect in a 42 U.S.C. 1983 case, see Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

A case somewhat similar to ours, in that claims under 42 U.S.C. 1981 and 42 U.S.C. 1983 were brought against a lawyer for actions taken as County Attorney is In Re Vinci, 108 B.R. 439 (Bkcy. S.D.N.Y. 1989). Vinci claimed all manner of unlawful conduct by the lawyer, Putnam County, and the Town of Carmel in violation of 42 U.S.C. 1981, 42 U.S.C. 1983, and New York state law, and sought $1 million plus in actual damages, plus punitive damages. The defendants, the lawyer included, wanted the case transferred to the District Court as a personal injury tort claim, noting in particular that claims under 42 U.S.C. 1983 are just the type of personal injury actions which may not be tried

in the Bankruptcy Court. Not so though, for as in <u>Perino v. Cohen</u>, supra, the Bankruptcy Court held that a personal injury tort under 28 U.S.C. 157 (b)(5) must involve <u>bodily injury</u>, and "a claim for tort without trauma or bodily injury is not within the statutory exception for a personal injury tort."

Remember that there was a lawyer defendant in Vinci, William D. Spain Jr., Putman County Attorney. As to the 42 U.S.C. 1983 claim against him, the Court said this:

> An official of a municipality who acts within the scope of his official duties may not be held personally liable for conduct or the part of the municipality although the municipality may be liable for such conduct.

Of ancillary interest, the Supreme Court on April 14, 2008 granted certiorari in <u>Van de Kamp v. Goldstein</u>, No. 07-854, on these questions:

1. Where absolute immunity shields an individual prosecutor's decisions regarding the disclosure of an informant in compliance with <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) made in the course of preparing for the initiation of judicial proceedings or trial in any individual prosecution, may a plaintiff circumvent that immunity by suing one or more supervising prosecutors for purportedly improperly training, supervising, or setting policy with regard to the disclosure of such informant information for all cases prosecuted by his or her agency?

2. Are the decisions of a supervising prosecutor as chief advocate in directing policy concerning, and overseeing training and supervision of, individual prosecutors' compliance with Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) in the course of preparing for the initiation of judicial proceedings or trial for all cases prosecuted by his or her agency, actions which are "intimately associated with the judicial phase of the criminal process" and hence shielded from liability under Imbler v. Pachtman, 424 U.S. 409, 430 (1976)?

See also the decision below, Goldstein v. City of Long Beach, 481 F.3d 1170 (9th Cir. 2007), as well as Dunton v. County of Suffolk, 729 F.2d 903 (2nd Cir. 1984) and Owen v. City of Independence, 455 U.S. 533, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Clayton and Loretta Stokes, citizens of Mississippi, while guests at a Days Inn in Pensacola, Florida, were victims of armed robbery and aggravated battery. They sought damages for their personal injuries and loss of consortium in the Chapter 11 case of the corporate owner of the Days Inn. Judge Potter in Charlotte transferred the Stokes' claims to the District Court for the Northern District of Florida, Stokes v. Southeast Hotel Properties, Ltd., 877 F.Supp. 986 (W.D.N.C. 1994). Note however the Stokes' claims for personal bodily injury, based upon aggravated battery. There is again no such physical injury in this case, nor any claim for loss of consortium.

Bertholet v. Harman, 126 B.R. 413 (Bkcy. D.N.H. 1991), involved the alleged negligent acts of a Chapter 7 trustee in taking control of and liquidating

9

the assets of a cooperate debtor. The Court noted, we suggest analogously to this case, that:

> It makes sense that claims for minor emotional distress not the focus of the complaint not be transferred to the district court. Otherwise, alleged incidental damages such as those present in this case largely concerning economic damages would too easily get transferred and too readily remove the jurisdiction of the court designated to try bankruptcy related issues. 126 B.R. 415.

William Leathem and Richele Von Volkmar had a wretched marriage, apparently. After she filed a Chapter 7 case, he filed a complaint for damages for malicious prosecution of a criminal battery proceeding and a civil proceeding for a domestic protection order, defamation, intentional infliction of emotional distress for false allegations of child sexual abuse and homosexuality, and tortious interference with a business relationship, all premised on Illinois law. The Bankruptcy Court in Chicago transferred the case to the District court, doubtless with a sigh of relief, In Re Von Volkmar 217 B.R. 561 (Bkcy. Ill.1998). Upon Leathem's motion under Rule 59(e), Federal Rules of Civil Procedure, the Court declined to amend its decision, noting, inter alia, that <u>for purposes of the statute of limitations</u> under Illinois law, a personal injury claim need not involve direct physical injury, In Re Von Volkmar, 218 B.R. 890 (Bkcy. N.D. Ill. 1998).

We suggest Volkmar is readily distinguishable in at least three ways. First, the claims there were all premised on Illinois state law. Second, the fact situation, down to Leathem's hives and hair loss, are too bizarre to serve as precedent for anything, i.e. the case is truly sui generis. Third, as we have

noted before, federal courts have since at least 1858 tried deligently to keep their distance from domestic relations matters. They have "disclaimed jurisdiction altogether in the courts of the United States upon the subject of divorce, or for the allowance of alimony", etc., Barber v. Barber 21 How. 582 at 584, 16 L.Ed.226 (1858). See also Ohio ex Rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed 489 (1950) and Albanese v. Richter, 161 F.2d 688 (3rd Cir. 1947).

In Massey Energy Company v. West Virginia Consumers for Justice, 351 B.R. 248 (E.D.Va. 2006), Massey Energy and its CEO filed a defamation suit against WVCJ, a political advocacy group, alleging defamation and a conspiracy between WVCJ and WVNS-Channel 59, a West Virginia television station, in state court in Virginia. After WVCJ filed a Chapter 11 case, the defendants removed the defamation/conspiracy case to the District Court pursuant to 28 U.S.C. 1334(b) and 28 U.S.C. 1452 on the theory that the defamation and conspiracy claims were "related to" the Chapter 11 case. The plaintiffs in turn asked the District Court to abstain under 28 U.S.C. 1334(c)(2) and to remand the case to the state court. The defendants then argued that mandatory abstention under 28 U.S.C. 1334(c)(2) is inapplicable to personal injury tort claims and that such claims under 28 U.S.C. 157(b)(2) and 28 U.S.C. 157(b)(4), as non-core proceedings, are not subject to mandatory abstention. Judge Cacheris however concluded that the personal injury exception under 28 U.S.C. 157 "is limited to a narrow range of claims that involve an actual physical injury", noting that had 28 U.S.C. 157 simply said

"tort", the Court would rule otherwise, as defamation is certainly a tort, adding that:

> it is the opinion of this Court that Congress
> intended to limit the claims fitting the exception
> by introducing the narrow, modifying language
> "personal injury", citing Vinci, Interco, Cohen, and
> Bertholet, 351 B.R. at 351.

In Almond v. Kent, 459 F.2d 2000 (4th Cir. 1972) the Court held in a statute of limitations case, i.e. not a bankruptcy case and in no way referencing 28 U.S.C. 157, that "in the broad sense" every well-founded cause of action under 42 U.S.C. 1983 results from personal injuries. These statute of limitations cases arise because the various Reconstruction Civil Rights Acts contain no specific statute of limitations, so federal courts generally look to a similar state statute, under 42 U.S.C. 1988. In Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) though, the Court recognized that 42 U.S.C. 1983 has no precise counterpart in state law, citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

Of interest here, in light of the three plaintiffs' significant reliance on their rights under the Reconstruction Civil Rights Acts is what Justice Stevens said for the Court in Wilson v. Garcia about the history of 42 U.S.C. 1983:

> The specific historical catalyst for the Civil
> Rights Act of 1871 was the campaign of
> violence and deception in the South,
> fomented by the Ku Klux Klan, which was
> denying decent citizens their civil and
> political rights. See Briscoe v. LaHue, 460
> U.S. 325, 336-340, 103 S.Ct. 1108, 1116-

12

> 1118, 75 L.Ed.2d 96 (1983). The debates on the Act chronicle the alarming insecurity of life, liberty, and property in the Southern States, and the refuge that local authorities extended to the authors of these outrageous incidents: "While murder is stalking about in disguise, while whippings and lynchings and banishing have been visited upon unoffending American citizens, the local administrations have been found inadequate or unwilling to apply the proper corrective. Combinations, darker than the night that hides them, conspiracies, wicked as the worst of felons could devise, have gone unwhipped of justice. Immunity is given to crime, and the records of public tribunals are searched in vain for any evidence of effective redress." Cong. Globe, 42d Cong., 1st Sess., 374 (1871) (remarks of Rep. Lowe).

By providing a remedy for the violation of constitutional rights, Congress hoped to restore peace and justice to the region through the subtle power of civil enforcement. Finally, citing Adams v. Woods, 2 Cranch 336, 2 L.Ed. 297 (1805), Justice Stevens noted that in compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten.

In Re Gary Brew Enterprises, Ltd., 198 B.R. 616 (Bkcy. S.D. Calif. 1996) is against our position and against Atron, which the California Court did not so much distinguish but simply found wrongly decided. We of course suggest it is Gary Brew Enterprises that was wrongfully decided. As with our case, it was not a statute of limitations case. It was a racial discrimination in employment case brought under 42 U.S.C. 1981 and Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e et seq. And yet, the Bankruptcy Court in California grounded its decision entirely on three statute of limitations cases, which it found

contrary to the Michigan decision in Atron, again not a statue of limitations case: Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); Goodman v. Lukens Steel Company, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); and Almond v. Kent, 459 F.2d 200 (4th Cir. 1972).

In Re Grimes, _____ B.R. _____ (Bkcy. N.D. W.Va. 2008) concerned a West Virginia state court action brought by the debtor against First-Citizens Bank and a bank officer, based on the bank's unauthorized withdrawal of funds from Grimes' account. Grimes alleged negligence and claimed damages for humiliation, embarrassment, and emotional distress. It was entirely a pre-petition claim premised on state law. The defendants removed the case from the West Virginia state court to the Bankruptcy Court. Grimes, asserting that his state court action was for a personal injury tort, sought to have it remanded on the ground that the Bankruptcy Court lacked jurisdiction under 28 U.S.C. 157(b)(5). Judge Flatley however held that Grimes' suit against the bank was not a personal injury tort action within the context of 28 U.S.C. 157(b)(5), following In Re Atron Inc. of Michigan, 172 B.R. 541 (Bkcy. W.D. Mich. 1994) and Massey Energy Company v. West Virginia Consumers for Justice, 351 B.R. 348 (E.D. Va. 2006). The Court in Grimes noted that while the legislative history of 28 U.S.C. 157(b)(5) is not particularly enlightening, Congressman Kastenmeier of Wisconsin did state in the House debate on the bill, H.7471, on June 29, 1984, that it was only a "narrow category of cases" to which 28 U.S.C. 157(b)(5) would apply. Also, bankruptcy courts do retain jurisdiction over many different types of tort claims, e.g. determination of fraud

14

and or willful and malicious injury under 11 U.S.C. 523(a).  As the Court in Grimes noted, an overly expansive view of what constitutes a personal injury tort under 28 U.S.C. 157(b)(5) would create a risk "that financial, business, or property tort claims could escape the jurisdiction of the bankruptcy court."

Interestingly, In Re Smith, _____ B.R. _____, 2008 WL 266341 (Bkcy. D. Nev. June 24, 2008), dealt with a libel action in a California state court against Smith, a Las Vegas newspaper columnist, who filed a Chapter 7 bankruptcy case in Nevada just before the California case was to go to trial.  Judge Markell held that a libel claim was indeed a personal injury tort claim under 28 U.S.C. 157(b)(5), but that that statute is not jurisdictional.  Rather, the statute is concerned with the allocation of the jurisdiction that both the Bankruptcy Court and the District Court possess.  Thus, the mere fact that a claim is a personal injury tort claim does not deprive the Bankruptcy Court of jurisdiction over the claim, unless a party requests and the District Court grants withdrawal of the reference.  Now to be sure, Smith is an unusual case, perhaps sui generis.

Judge Stocks, we suggest, may have been taken in by the lacrosse players' allegations of bodily injury.  They have indeed alleged bodily harm, but those allegations must be tested by common sense, and ultimately by Rule 11.  At least two books have been published about what is known as the Duke lacrosse case.  Entire forests have fallen to produce the newsprint containing all the articles written about the case.  The Internet has overdosed on it.  Nowhere in all of this has there appeared so much as a hint of bodily harm

suffered by these creditors. The common sense conclusion is that it is because it never happened. We can, if inclined to Rule 11 risk, allege that hippopotamuses breed in the Cape Fear River. That would however not make it so, and we should not expect a court to take such allegation seriously. What we have from these creditors is in effect a hippopotamus allegation.

In <u>Robbins v. Robbins</u>, 964 F.2d 342 (4th Cir. 1992), Judge Ervin set out factors to be considered and weighed in cases of this nature:

- A. Whether the issues of the pending litigation involve only state law, so the expertise of the Bankruptcy Court is unnecessary. Unlike the legal aftermath of the breakup of the Robbins' 40 year marriage in Florida, the case here, <u>Evans v. City of Durham</u>, involves primarily, perhaps entirely, federal law, for the most part surrounding the Reconstruction Civil Rights Acts. The key issue here is the question of whether in the Duke lacrosse prosecutions Mike Nifong acted willfully and maliciously, within the context of 11 U.S.C. 523(a)(6). In a nutshell, that is what the fuss is about here, not Florida or North Carolina domestic relations law. Note also the heavy emphasis in the complaint in <u>Evans v. City of Durham</u> on equitable relief, injunctive relief. The plaintiffs essentially seek to put the Durham Police Department in receivership, but no equitable relief is sought against Mike Nifong.
- B. Whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy

16

case if the stay were not lifted because matters would have to be litigated in the Bankruptcy Court. Judicial economy is already the big loser in this case, though it could get worse. If the stay were lifted, Evans v. City of Durham would then proceed apace in this Court with the full complement of 15 defendants rather than the 14 defendants, including the only deep pockets, already counted as present. It is a sure bet that the case will go to the Court of Appeals in Richmond, and likely to the Supreme Court in Washington. It has every promise of bouncing back and forth for some years, not unlike the recent case of Anson Dorrance, the soccer coach at UNC Chapel Hill, which took only ten years to resolve. In the meanwhile the Chapter 7 case here would remain in limbo, for years. Now suppose the stay were not lifted. The Bankruptcy Court would then have to deal with the pending adversary proceeding, Evans v. Nifong, No. AP 08-9015, but there are lots of ways to do this, with judicial creativity and the parties' cooperation and consent.

C. Whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the Bankruptcy Court, i.e. as is routinely done in domestic relations cases. In the case at hand the bankruptcy estate consists of $3389, before any Trustee's commission, and is decidedly unlikely to grow. In this case this Robbins factor is pretty much a non-issue.

These creditors note that Mike Nifong will likely have to testify, if called upon in whatever forum these cases are resolved. To paraphrase the Vice President, so what? Any of us who are witnesses to litigated events run that risk and are subject to subpoena. The debtor has at no time evidenced any reluctance to testify, if called upon to do so. Indeed he is unemployed, with little else to do. The <u>Robbins</u> factors we suggest mitigate against lifting the stay here. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) is in many ways our case here. Look at Dr. Geiger's conduct in his treatment of Margaret Kawaauhau. It is outrageous in the extreme, and it is a wonder the $355,000 malpractice judgment against him wasn't higher. Dr. Geiger carried no professional liability insurance[1]. Mrs. Kawaauhau understandably felt aggrieved and sought to have the malpractice debt declared nondischargeable in his Missouri bankruptcy case. The Bankruptcy Court and the District Court in St. Louis ruled in her favor, but the Eighth Circuit reversed, and the Supreme Court unanimously held that the injury to Mrs. Kawaauhau was <u>recklessly and negligently</u> inflicted, and thus dischargeable under 11 U.S.C. 523(a)(6). See also <u>Tinker v. Colwell</u>, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed.754 (1904), distinguished in part because of its emphasis on common law forms of action.

These creditors will doubtless spring now to the disbarment and contempt orders, which they have filed with this Court, in an effort to distinguish the conduct of Dr. Geiger in Kawaauhau from the conduct of Mike

---

[1] Nor did Mike Nifong, but likely few if any prosecutors do.

Nifong in the Duke lacrosse case. Those orders are damning in their language, but they both stop just short of the willful and malicious standard of 11 U.S.C. 523 (a)(6).

## CONCLUSION

As we have demonstrated, the claims of these three creditors are <u>not</u> personal injury tort claims within the context of 28 U.S.C. 157(b)(2)(B) and 28 U.S.C. 157(b)(5). These creditors, certainly their counsel, have to know they will never collect so much as $35 from Mike Nifong. They must know that, yet still they come[2]. For all the reasons set forth above, the Court should reverse the May 27, 2008 decision of the Bankruptcy Court and remand the case.

Respectfully submitted,

/s/ James B. Craven III
James B. Craven III
Attorney for the Debtor
NC State Bar 997
(919) 688-8295
P.O. Box 1366
Durham, NC 27702

---

[2] The answer may lie in <u>The Merchant of Venice</u>, Act IV, Scene I, where Bassanio offers Shylock twice the amount owed, in cash, yet Shylock insists on a pound of Antonio's flesh. And yes, to paraphrase Portia, we do think it is perhaps time for mercy here, and forgiveness, and healing. All these lives must go on.

CERTIFICATE OF SERVICE

I have this day mailed copies of this brief to interested parties and counsel, as follows:

Sara A. Conti, Esquire
Chapter 7 Trustee
Box 939
Carrboro, NC 27510

Charles Davant IV, Esquire
Williams & Connolly
725 Twelfth Street, NW
Washington, DC 20005

David S. Rudolf, Esquire
Rudolf, Widenhouse & Fialko
312 West Franklin Street
Chapel Hill, NC 27516

Michael D. West, Esquire
Bankruptcy Administrator
Box 1828
Greensboro, NC 27420

Mr. Michael B. Nifong
615 November Drive
Durham, NC 27712

This 15th day of August 2008.

/s/ James B. Craven III
James B. Craven III