# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

In re Michael B. Nifong,

        Debtor/Appellant.

Case No. 08-00441-JAB

## BRIEF OF PLAINTIFFS-APPELLEES

**WILLIAMS & CONNOLLY LLP**
Charles Davant IV (N.C. Bar #28489)
725 Twelfth Street, N.W.
Washington, DC  20005

*Attorney for Plaintiffs-Appellees*
  *David F. Evans and Collin Finnerty*

-and-

**RUDOLF WIDENHOUSE & FIALKO**
David S. Rudolf (N.C. Bar #8587)
312 West Franklin Street
Chapel Hill, NC  27516

*Attorney for Plaintiff-Appellee*
  *Reade Seligmann*

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

BASIS OF APPELLATE JURISDICTION ............................................................ 1

ISSUES PRESENTED ............................................................................................ 1

STATEMENT OF THE CASE ............................................................................... 2

FACTS ..................................................................................................................... 4

    A.    Plaintiffs' Claims Against Nifong ................................................... 4

    B.    Nifong's Bankruptcy Filing .............................................................. 5

    C.    Plaintiffs' Lift-Stay Motion ............................................................. 6

    D.    The Bankruptcy Court's Order ......................................................... 7

ARGUMENT ........................................................................................................... 8

I.    Plaintiffs' Federal Civil Rights Claims Are "Personal Injury Tort
Claims" that Must Be Decided in the District Court. ................................ 8

    A.    Personal Injury Claims Must Be Heard in the District Court. ..... 8

    B.    "Personal Injury" Includes Violations of Personal Rights. ........... 9

          1.    Plaintiffs' Federal Civil Rights Claims Against Nifong
(Causes of Action 1–4 and 7–10) Are Personal Injury
Claims ................................................................................. 14

    C.    Plaintiffs' Claims Are "Personal Injury Claims" Even Under the
Minority Rule. ................................................................................ 17

II.    Independent Grounds Support the Decision Below. ............................... 21

    A.    Plaintiffs' State-Law Claims (Causes of Action 13–15) Are
Personal Injury Claims and Must Be Heard in District Court
Under § 157(b). ............................................................................. 21

    B.    Plaintiffs' Civil Rights Claims Require Consideration of "Other
Laws of the United States" and Must Be Heard in District Court
Under § 157(d). ............................................................................. 23

    C.    There Is "Cause" To Lift the Automatic Stay Under 11 U.S.C. §
362(d). ............................................................................................ 24

          1.    Lifting the Automatic Stay Cannot Prejudice Nifong's
Estate. ................................................................................. 25

          2.    The Automatic Stay Would Have Severely Prejudiced
Plaintiffs. ........................................................................... 26

III.    Nifong's Reference to "Immunity" Has No Relevance to This Appeal. ...............28

CONCLUSION ...............................................................................................29

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

11 U.S.C. § 362(d) ...................................................................................... *passim*

11 U.S.C. § 522(d)(11)(D) ................................................................................ 11

11 U.S.C. § 523(a)(6) ..................................................................................... *passim*

11 U.S.C. § 523(a)(9) ........................................................................................ 11

28 U.S.C. § 157(b)(2) ..................................................................................... *passim*

28 U.S.C. § 157(b)(5) ..................................................................................... *passim*

28 U.S.C. § 157(c)(1) ........................................................................................ 16

28 U.S.C. § 157(d) ................................................................................... 1, 8, 23

28 U.S.C. § 158(a)(1) .......................................................................................... 1

42 U.S.C. § 1981 ................................................................................................ 16

42 U.S.C. § 1983 .......................................................................................... *passim*

42 U.S.C. § 1985 .......................................................................................... *passim*

## FEDERAL CASES

In re Allred, No. 03-11315C-13G, 2004 WL 3502655 (Bankr. M.D.N.C. Feb. 26, 2004) ............................................................................................................... 25

AOL, Inc. v. CN Products, Inc., 272 B.R. 879 (E.D. Va. 2002) ........................ 26

Adelson v. Smith (In re Smith), 389 B.R. 902 (Bankr. D. Nev. 2008) .............. 8

Almond v. Kent, 459 F.2d 200 (4th Cir. 1972) ........................................... 15, 16

Anthony v. Baker (In re Baker), 86 B.R. 234 (D. Colo. 1988) ............ 13, 21, 23

In re Atron Inc., 172 B.R. 541 (Bankr. W.D. Mich. 1994) ............................... 18

Baggott v. Piper Aircraft Corp., 70 B.R. 223 (S.D. Ohio 1986) ...................................... 13

Bertholet v. Harman (In re Bertholet), 126 B.R. 413 (Bankr. D.N.H. 1991).............. 18, 20

Boyer v. Balanoff (In re Boyer), 93 B.R. 313 (Bankr. N.D.N.Y. 1988) ................... *passim*

In re Connors, 497 F.3d 314 (3d Cir. 2007) ....................................................................... 1

Contemporary Lithographers, Inc. v. Hibbert (In re Contemporary Lithographers, Inc.), 127 B.R. 122 (M.D.N.C. 1991)...................................................................... 24

Cudmore v. Howell, 232 B.R. 335 (E.D.N.C. 1999) ........................................................ 27

Cunningham v. Scibana, 259 F.3d 303 (4th Cir. 2001)..................................................... 11

Demery v. City of Youngstown, 818 F.2d 1257 (6th Cir. 1997) ...................................... 17

Dunton v. County of Suffolk, 729 F.2d 903 (2d Cir. 1984).............................................. 28

Ewald v. National City Mortg. Co. (In re Ewald), 298 B.R. 76 (Bankr. E.D. Va. 2002)............................................................................................................................. 24

Goldschmidt v. Erickson (In re Erickson), 330 B.R. 346 (Bankr. D. Conn. 2005) .......... 12

Goldstein v. City of Long Beach, 481 F.3d 1170 (9th Cir. 2007), cert. granted, 128 S. Ct. 1872 (2008) ..................................................................................................... 28

Greenhouse v. MCG Capital Corp., 392 F.3d 650 (4th Cir. 2004) ............................... 3, 21

Grimes v. First-Citizens Bank & Trust Co. (In re Grimes), 388 B.R. 195 (Bankr. N.D.W. Va. 2008)..................................................................................................... 18

Hansen v. Borough of Seaside Park (In re Hansen), 164 B.R. 482 (D.N.J. 1994)....*passim*

Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505 (7th Cir. 1982)......................... 26

Hugger v. Rutherford Institute, No. 5:00CV180-H, 2001 WL 114397 (W.D.N.C. Jan. 18, 2001), aff'd, 63 F. App'x 683 (4th Cir. 2003) (per curiam) .................... 22

Johnson v. Neilson (In re Slatkin), 525 F.3d 805 (9th Cir. 2008).................................... 21

Kawaauhau v. Geiger, 523 U.S. 57 (1998).................................................................... 6, 7

Leathem v. Von Volkmar (In re Von Volkmar), 217 B.R. 561 (Bankr. N.D. Ill. 1998) ...................................................................................................*passim*

Leathem v. Von Volkmar (In re Von Volkmar), 218 B.R. 890 (Bankr. N.D. Ill. 1998) ...................................................................................................*passim*

In re Linville, No. 04-52886C7W, 2005 WL 1289373 (Bankr. M.D.N.C. Feb. 1, 2005) ........................................................................................................ 27

Longhenry v. Wyatt (In re Longhenry), 246 B.R. 234 (Bankr. D. Md. 2000) ................. 11

Massey Energy Co. v. West Virginia Consumers for Justice, 351 B.R. 348 (E.D. Va. 2006) ............................................................................................... 18

McGhan v. Rutz (In re McGhan), 288 F.3d 1172 (9th Cir. 2002) .................................... 14

In re Meredith, 337 B.R. 574 (Bankr. E.D. Va. 2005), aff'd, 2005 U.S. Dist. LEXIS 40242 (E.D. Va. Aug. 19, 2005) ......................................................... 24, 26

Moore v. Idealease of Wilmington, 358 B.R. 248 (E.D.N.C. 2006) ......................*passim*

Nosek v. Ameriquest Mortg. Co. (In re Nosek), No. 02-46025, 2006 WL 1867096 (Bankr. D. Mass. June 30, 2006) .............................................................. 12, 19, 21

Owen v. City of Independence, 445 U.S. 622 (1980) ....................................................... 28

Patterson v. Williamson (In re Patterson), 150 B.R. 367 (E.D. Va. 1993) ................. 13, 16

Patterson v. Williamson (In re Patterson), 153 B.R. 32 (E.D. Va. 1993) ................... 13, 16

Perino v. Cohen (In re Cohen), 107 B.R. 453 (S.D.N.Y. 1989).................................... 9, 17

Priest v. Interco, Inc. (In re Interco, Inc.), 135 B.R. 359 (Bankr. E.D. Mo. 1991) ..... 18, 19

Rizzo v. Passialis (In re Passialis), 292 B.R. 346 (Bankr. N.D. Ill. 2003)........ 9, 12, 14, 21

Robbins v. Robbins (In re Robbins), 964 F.2d 342 (4th Cir. 1992)............... 24, 25, 27, 28

In re Roberts, No. 01-81072, 2001 WL 1699604 (Bankr. M.D.N.C. Aug. 1, 2001) ........ 25

In re Schepps Food Stores, Inc., 169 B.R. 374............................................................ 12, 21

Smith v. N.Y. State Higher Education Services Corp. (In re Smith), 95 B.R. 286
    (Bankr. N.D.N.Y. 1988) ........................................................................ 13, 16, 17

Stokes v. Southeast Hotel Properties, Ltd., 877 F. Supp. 986 (W.D.N.C. 1994).............. 17

Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.), 281 B.R.
    154 (Bankr. D. Conn. 2002) ................................................................. 10, 11, 12, 14

In re Thomas, 211 B.R. 838 (Bankr. D.S.C. 1997) ................................................. 9, 12, 21

Thomas v. Adams (In re Gary Brew Enterprises Ltd.), 198 B.R. 616 (Bankr. S.D.
    Cal. 1996) ............................................................................................... 12, 15, 16

United States v. Ickes, 393 F.3d 501 (4th Cir. 2005) ........................................................ 10

Va. International Terminals, Inc. v. Edwards, 398 F.3d 313 (4th Cir. 2005) ................... 11

Velis v. Kardanis, 949 F.2d 78 (3d Cir. 1991) ................................................................. 11

Vinci v. Town of Carmel (In re Vinci), 108 B.R. 439 (Bankr. S.D.N.Y. 1989).............. 18

Walton v. AG Credit, ACA (In re Walton), 158 B.R. 939 (Bankr. N.D. Ohio 1993) ...... 23

In re Washington, No. 03-43611, 2007 WL 3376235 (Bankr. E.D. Tex. Nov. 8,
    2007)......................................................................................................................... 14

Wilson v. Garcia, 471 U.S. 261 (1985) ................................................................. 14, 15, 16

Young v. Young, No. 1:06CV00781, 2007 WL 676689 (M.D.N.C. Feb. 28, 2007),
    aff'd, 273 F. App'x 220 (4th Cir. 2008) (per curiam)........................................... 25

## NORTH CAROLINA CASES

America Manufacturers Mutual Insurance Co. v. Morgan, 556 S.E.2d 25 (N.C. Ct.
    App. 2001)......................................................................................................... 10, 22

Fieldcrest Cannon, Inc. v. Fireman's Fund Insurance Co., 477 S.E.2d 59 (N.C. Ct.
    App. 1996).............................................................................................................. 22

Graham v. James F. Jackson Associates, Inc., 352 S.E.2d 878 (N.C. Ct. App.
    1987)....................................................................................................................... 22

Guthrie v. Conroy, 567 S.E.2d 403 (N.C. Ct. App. 2002) .......................................... 10, 22

Minga v. Zollicoffer, 23 N.C. 278 (N.C. 1840)................................................................... 22

Stanback v. Westchester Fire Insurance Co., 314 S.E.2d 775 (N.C. Ct. App. 1984) ....... 22

Watson v. Dixon, 532 S.E.2d 175 (N.C. 2000) ................................................................. 22

## SECONDARY SOURCES

18 Oxford English Dictionary (2d ed. 2001)..................................................................... 18

Black's Law Dictionary (8th ed. 2004) ................................................................. 3, 10, 21

Black's Law Dictionary (6th ed. 1990) ............................................................................. 9

Black's Law Dictionary (5th ed. 1979) ............................................................................. 9

Webster's Unabridged Dictionary (Random House 2d ed. 2001)..................................... 18

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(a)(1).  A Bankruptcy Court's order lifting the automatic stay is an appealable final order.  *See In re Connors*, 497 F.3d 314, 318 (3d Cir. 2007).

## ISSUES PRESENTED

1. Whether the Bankruptcy Court correctly lifted the automatic stay on the ground that Plaintiffs-Appellees' ("Plaintiffs'") federal civil rights claims against Defendant-Appellant Michael B. Nifong are properly classified as "personal injury tort . . . claims" that a bankruptcy court lacks jurisdiction to adjudicate under 28 U.S.C. § 157(b).

2. Whether the Bankruptcy Court's decision to lift the automatic stay can be affirmed on the independent ground that Plaintiffs' state-law claims are classified as "personal injury tort . . . claims" under § 157(b).

3. Whether the Bankruptcy Court's decision to lift the automatic stay can be affirmed on the independent ground that Plaintiffs' claims require "consideration of both title 11 *and other laws of the United States*" (namely, 42 U.S.C. §§ 1983 and 1985), and so must be decided in the District Court under 28 U.S.C. § 157(d).

4. Whether the Bankruptcy Court's decision to lift the automatic stay can be affirmed on the independent ground that there is "cause" to lift the automatic stay under 11 U.S.C. § 362(d)(1) because separate, duplicative proceedings on Plaintiffs' claims in both the District Court and the Bankruptcy Court would prejudice Plaintiffs, waste judicial resources, and risk inconsistent rulings.

## STATEMENT OF THE CASE

Plaintiffs are the three innocent students whom Defendant Nifong, then the Durham District Attorney, and his co-conspirators caused to be arrested, indicted, and publicly vilified on false charges of rape, sexual assault, and kidnapping in the now infamous "Duke Lacrosse Case." On October 5, 2007, Plaintiffs filed a civil action against Nifong and several other defendants in the District Court (*Evans v. City of Durham*, No. 07-739 (M.D.N.C.)). Nifong did not answer the complaint, but instead filed a bankruptcy petition in January 2008. Nifong admits that his bankruptcy filing was not an attempt to work out debts with creditors, but a tactic to short-circuit the District Court action and obtain a discharge that would free him to avoid responsibility for his alleged wrongdoing. *See, e.g.*, Ex. 3 (Nifong Opp. to Lift-Stay Mot.) at 2 ("We can scarcely deny what Stevie Wonder could see.").[1]

In April 2008, Plaintiffs filed a motion to lift the automatic stay so that their claims against Nifong could be adjudicated as part of the District Court action, instead of in the Bankruptcy Court. After submission of briefs, oral argument, and supplemental briefing, the Bankruptcy Court on May 27, 2008 issued a 12-page Opinion and Order granting Plaintiffs' motion, lifting the automatic stay as to Plaintiffs' claims against Nifong, and ordering that those claims be heard in the District Court. The Bankruptcy Court held that eight of Plaintiffs' causes of action against Nifong, their federal civil rights claims, "are personal injury torts for purposes of [28 U.S.C.] Section 157(b)(5) and that this [bankruptcy] court therefore lacks jurisdiction to adjudicate and liquidate those claims." Ex. 1 (Op.) at 10–11. The Bankruptcy Court did not decide whether Plaintiffs'

---

[1] All cited exhibits are excerpts from the Record on Appeal filed with this Court at Docket Nos. 2–4 in this appeal (No. 08-441).

remaining claims against Nifong, alleging violations of North Carolina law, constitute personal injury torts "because it is clear that all of the claims should be tried in the same case in the same court." *Id*. at 12.

In holding that Plaintiffs' federal civil rights claims constitute personal injury torts, the Bankruptcy Court adopted the majority rule that personal injury claims under 28 U.S.C. § 157(b) include claims for any "invasion of personal rights and may include such injuries to the person as . . . malicious prosecution, false imprisonment, and mental suffering." Ex. 1 (Op.) at 7. That definition of personal injury claim is consistent with federal and North Carolina precedent, other provisions of the Bankruptcy Code, the legislative history of § 157(b), and even the definition of "personal injury" in *Black's Law Dictionary* and most insurance policies. Moreover, the United States Supreme Court, the Fourth Circuit, and many other courts have held, as the Bankruptcy Court did, that the federal civil rights claims that Plaintiffs have asserted against Nifong are properly treated as personal injury claims. Indeed, Plaintiffs' claims are considered personal injury claims even under the cases cited by Nifong. Accordingly, the Bankruptcy Court correctly concluded that it lacked jurisdiction to adjudicate Plaintiffs' claims. Its Order should be affirmed.

Moreover, although the Bankruptcy Court did not need to reach them, there are three independent grounds to sustain the decision below. *See, e.g.*, *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660 (4th Cir. 2004) (an order may be affirmed on "any ground supported by the record"). The Bankruptcy Court's Order should be affirmed on these grounds as well.

<u>FACTS</u>

**A.    Plaintiffs' Claims Against Nifong**

Plaintiffs' claims against Nifong arise from the now infamous Duke Lacrosse Case of 2006 and 2007.  Plaintiffs have alleged that Nifong, the Durham Police Department, and a private DNA laboratory caused Plaintiffs to be arrested, indicted, and publicly vilified for crimes that they knew did not occur.  *See generally* Ex. 4 (Am. Compl., *Evans v. City of Durham*, No. 07-739).  Specifically, Plaintiffs allege that Nifong and his co-conspirators fabricated evidence, concealed evidence of Plaintiffs' actual innocence, engaged in witness tampering and obstruction of justice, and made false and inflammatory statements to the media regarding Plaintiffs' supposed guilt, all in an effort to arrest and convict Plaintiffs on charges they knew to be untrue.  *See id*.

Nifong has been sanctioned in two prior proceedings relating to his misconduct in the Duke Lacrosse Case.  In June 2007, the North Carolina State Bar disbarred Nifong for violations of the Rules of Professional Conduct.  The State Bar found by "clear, cogent, and convincing evidence" that "Nifong's misconduct [wa]s aggravated by . . . [a] dishonest or selfish motive."  Ex. 5 (Order of Discipline) at 22.  The State Bar also found that "Nifong's misconduct resulted in significant actual harm to Reade Seligman, Collin Finnerty, and David Evans and their families," as well as harm to the legal profession and the justice system.  *Id*. at 23.  In August 2007, the Superior Court for Durham County found that Nifong was guilty of criminal contempt relating to the Duke Lacrosse Case, and sentenced him to a symbolic one day in jail.  *See* Ex. 9 (Judgment & Sentence).

On October 5, 2007, Plaintiffs filed suit in the District Court against Nifong, the City of Durham, DNA Security, Inc., and several individuals.  *See* Ex. 4 (Am. Compl.).  With respect to Nifong, Plaintiffs' District Court complaint asserts claims for:

- violations of the federal civil rights laws, specifically 42 U.S.C. § 1983 (Causes of Action 1–4, 7) and 42 U.S.C. § 1985 (Causes of Action 8–10));

- malicious prosecution and conspiracy under North Carolina law (Cause of Action 13);

- obstruction of justice and conspiracy under North Carolina law (Cause of Action 14); and

- intentional infliction of emotional distress (IIED) and conspiracy under North Carolina law (Cause of Action 15).

*See* Ex. 4 (Am. Compl.).

The complaint alleges, among other things, that Nifong and his co-defendants engaged in a willful and deliberate scheme to cause Plaintiffs to be arrested and indicted on false evidence. It alleges that Defendants caused Plaintiffs to be physically seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶ 335. The complaint further alleges that Defendants made Plaintiffs "into public pariahs, subjecting them to extreme and sustained public obloquy, causing them to endure death threats, taunts, and insults, and subjecting them to assaults by the local, national, and international media." *Id.* ¶ 514. It also alleges that as a result of Nifong and the other defendants' misconduct, Plaintiffs suffered "physical harm, emotional trauma, loss of liberty, loss of privacy . . . and irreparable harm to their reputations." *E.g.*, *id.* ¶ 336; *see also id.* ¶ 517 (alleging "disabling emotional, mental, and physical harm").

**B.    Nifong's Bankruptcy Filing**

Nifong did not serve an answer or move to dismiss the complaint. Rather, on the date his answer was due, Nifong filed a bankruptcy petition. *See* Ex. 6 (Pet.).[2] Nifong's

---

[2]    Upon receipt of Nifong's Notice of Filing Bankruptcy, the District Court terminated the District Court action administratively as to Nifong and held that "any party shall have the right to reopen this case [against Nifong] for any purpose . . . at any time prior to the 90th day after the final termination of the bankruptcy proceedings." Ex. 8 (Dist. Ct. Ord.).

bankruptcy petition sought a discharge by listing a $30 million liability to each Plaintiff. *See id*. at 20, 21, 34. Nifong claims to have no significant assets to pay creditors. *See id*. at 6. He also claims that a bank account and at least two homes are in his wife's name. *See* Ex. 6 (Pet.) at 9, 15.

Nifong has identified personal liability insurance coverage through two USAA homeowners' policies. *See* Ex. 7 (Decl.). Nifong has yet to produce sufficient documentation to establish whether or not these policies would cover the misconduct at issue. Plaintiffs have not yet had the opportunity to take discovery to determine if there may be additional sources of insurance.

## C. Plaintiffs' Lift-Stay Motion

In April 2008, Plaintiffs filed a Non-Dischargeability Proceeding in the Bankruptcy Court in order to preserve their right to an eventual ruling that Nifong's liabilities to Plaintiffs are not dischargeable in bankruptcy because they arose from "willful and malicious injury" under 11 U.S.C. § 523(a)(6). The Bankruptcy Code is clear that intentional tortfeasors like Nifong are not eligible for the "fresh start" of a bankruptcy discharge, and must compensate their victims.[3] *See* 11 U.S.C. § 523(a)(6); *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). Separately, Plaintiffs filed a motion to stay that Non-Dischargeability Proceeding and to lift the automatic stay "so that [Plaintiffs] may proceed with a pending District Court action to liquidate their claim against Nifong" (the "Lift-Stay Motion").

The parties' briefing on the Lift-Stay Motion was completed on April 22, 2008. On April 24, 2008, the Bankruptcy Court heard oral argument on the Lift-Stay Motion

---

[3] Although "unemployed with little . . . to do" (Nifong Br. at 18), Nifong enjoys a household income of $9,209.96 per month. *See* Ex. 6 (Pet.) at 15, 41.

and asked the parties to provide supplemental briefing on one issue: whether Plaintiffs'

District Court claims against Nifong are "personal injury tort . . . claims" within the

meaning of 28 U.S.C. § 157(b). The parties submitted this briefing on May 9, 2008.

### D. The Bankruptcy Court's Order

On May 27, 2008, the Bankruptcy Court issued a 12-page Opinion and Order

granting the Lift-Stay Motion. *See* Ex. 1 (Op.); Ex. 2 (Ord.). The Bankruptcy Court

noted as an initial matter that "the claims asserted by [Plaintiffs] must be adjudicated

somewhere before this court can determine the dischargeability issues raised in the

Dischargeability Proceeding." Ex. 1 (Op.) at 3. The Bankruptcy Court then proceeded to

determine whether it had jurisdiction over Plaintiffs' eight federal civil rights claims

against Nifong, holding that these claims "are personal injury torts for purposes of section

157(b)(5) and that this court therefore lacks jurisdiction to adjudicate and liquidate those

claims." *Id*. at 3, 10–11. Accordingly, the Bankruptcy Court lifted the automatic stay "so

that [Plaintiffs'] claims against [Nifong] may be adjudicated in the pending Civil Action

[in the District Court]." *Id*. at 12. The Bankruptcy Court also stayed the Dischargeability

Proceeding pending a further order of the Bankruptcy Court. *See id*. Under the

Bankruptcy Court's Order, the Bankruptcy Court retains jurisdiction to enforce any

judgment that may be entered against Nifong after trial in the District Court. *See* Ex. 2

(Ord.). Nifong appeals from this May 27, 2008 Order.[4]

---

[4]    Nifong asserts that his wrongdoing, as determined by the State Bar's Order of
Discipline, "stop[ped] just short of the willful and malicious [non-dischargeability]
standard of 11 U.S.C. 523(a)(6)." Nifong Br. at 18–19. Nifong offers no support for this
*ipse dixit* conclusion. Moreover, the issue of whether Nifong's debts to Plaintiffs are
dischargeable is a legal issue for the Bankruptcy Court to decide after Nifong's liability
has been determined in the District Court action. If Nifong is liable for intentional torts,
his liability is not dischargeable. *See Kawaauhau*, 523 U.S. at 61–62.

The Bankruptcy Court did not reach three other arguments that Plaintiffs presented as independent grounds for lifting the automatic stay: (1) Plaintiffs' state-law claims are also personal injury claims that must be decided in the District Court under 28 U.S.C. § 157(b); (2) Plaintiffs' federal claims must be decided in the District Court under 28 U.S.C. § 157(d) because they require "consideration of both title 11 and other laws of the United States"; and (3) "cause" exists to lift the automatic stay under 11 U.S.C. § 362(d) because holding a separate, duplicative proceeding in the Bankruptcy Court on Plaintiffs' claims against Nifong would prejudice Plaintiffs, waste judicial resources, and risk inconsistent rulings. *See* Ex. 10, Lift-Stay Mot. at 7–12; Ex. 11, Suppl. Br. at 8–11.

## ARGUMENT

I. **Plaintiffs' Federal Civil Rights Claims Are "Personal Injury Tort Claims" that Must Be Decided in the District Court.**

### A. Personal Injury Claims Must Be Heard in the District Court.

Nifong does not dispute that Plaintiffs' claims must be heard in the District Court if they are considered personal injury claims. "[P]ersonal injury tort . . . claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." 28 U.S.C. § 157(b)(5); *see also* 28 U.S.C. § 157(b)(2) ("personal injury tort . . . claims" are not core proceedings). "[T]he plain language of 28 U.S.C. § 157(b)(5) flatly prohibits a bankruptcy court from adjudicating and liquidating personal injury claims even when brought within a dischargeability proceeding." *Leathem v. Von Volkmar (In re Von Volkmar) ("Von Volkmar I")*, 217 B.R. 561, 565 (Bankr. N.D. Ill. 1998).[5]

_____

[5] On appeal, Nifong suggests that *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 913 (Bankr. D. Nev. 2008), stands for the proposition that parties may voluntarily consent to bankruptcy court jurisdiction over personal injury claims. *See* Nifong Br. at 15. Nifong

**B. "Personal Injury" Includes Violations of Personal Rights.**

The Bankruptcy Code does not define "personal injury tort," and, as the Bankruptcy Court observed below, some courts have disagreed as to the term's meaning. *See* Ex. 1 (Op.) at 5. The Bankruptcy Court expressly rejected the view of the minority of courts that have narrowly defined the scope of "personal injury claims" to include only those torts that require proof of either bodily harm "or a psychiatric impairment beyond mere shame and humiliation" as "an essential element" of the claim. *Id*. at 6; *Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (S.D.N.Y. 1989). Instead, the Bankruptcy Court sided with the majority view, which holds that Congress intended for "personal injury claims" to have the term's broader, ordinary meaning:

> A personal injury tort encompasses any injury which is an invasion of personal rights and may include such injuries to the person as libel or slander, criminal conversion, malicious prosecution, false imprisonment, and mental suffering.

Ex. 1 (Op.) at 7 (quoting *Von Volkmar I*, 217 B.R. at 566, and noting that *Von Volkmar I* was quoting *Black's Law Dictionary* 786 (6th ed. 1990)). *See also, e.g.*, *Moore v. Idealease of Wilmington*, 358 B.R. 248, 250 (E.D.N.C. 2006) (applying the "majority view" that neither bodily harm nor severe emotional distress need be alleged); *accord Rizzo v. Passialis (In re Passialis)*, 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003); *In re Thomas*, 211 B.R. 838, 840–41 (Bankr. D.S.C. 1997) (quoting *Black's Law Dictionary* 707 (5th ed. 1979)); *Von Volkmar I*, 217 B.R. at 565–66 (same); *Hansen v. Borough of*

---

does not (and cannot) contend that Plaintiffs have provided such consent here. Moreover, *Smith* is an ill-reasoned outlier, as even Nifong appears to concede. *See* Nifong Br. at 15 ("Now to be sure, *Smith* is an unusual case, perhaps, sui generis."). "Graven in stone is the maxim that parties cannot confer [subject matter] jurisdiction on a federal [bankruptcy] court by consent or stipulation." *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 315 (Bankr. N.D.N.Y. 1988) (first brackets in original) (quotation marks omitted).

*Seaside Park (In re Hansen)*, 164 B.R. 482, 486 (D.N.J. 1994) (same); *Boyer*, 93 B.R. at 317 (Bankr. N.D.N.Y. 1988) (same).[6]

The Bankruptcy Court properly looked to the term's common meaning in rejecting Nifong's argument that personal injury claims are limited to those involving "physical trauma or impact such as a slip and fall or assault resulting in bodily injury." Ex. 1 (Op.) at 7. "A fundamental canon of statutory construction requires that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Ickes*, 393 F.3d 501, 504 (4th Cir. 2005) (applying the *Black's Law Dictionary* definition of "cargo" to interpret a federal statute) (quotation marks omitted). "Personal injury" in the non-negligence context is defined as "[a]ny invasion of a personal right, including mental suffering and false imprisonment." *Black's Law Dictionary* 802 (8th ed. 2004). North Carolina courts and insurance policies also define personal injury claims to include claims for false arrest, malicious prosecution, and IIED, as discussed in detail below. *See, e.g.*, *Guthrie v. Conroy*, 567 S.E.2d 403, 408 (N.C. Ct. App. 2002) (IIED is "a common law tort action alleging personal injury."); *Am. Mfrs. Mut. Ins. Co. v. Morgan*, 556 S.E.2d 25, 29 (N.C. Ct. App. 2001) (quoting insurance policy definition of personal injury to include "mental anguish and mental injury [and] [f]alse arrest [and] malicious prosecution").

---

[6]     A third view holds that where "a claim might be a 'personal injury tort claim' under the 'broader' view but has earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the right to resolve the 'personal injury tort claim' issue by (among other things) a more searching analysis of the complaint." *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 161 (Bankr. D. Conn. 2002). Here, however, Plaintiffs' claims plainly do not have the "earmarks of a financial, business or property tort claim, or a contract claim," *id.*, and, as discussed below, are properly considered personal injury claims under either the majority or minority view. They do not belong in bankruptcy court.

The Bankruptcy Court also properly considered the fact that Congress omitted a "bodily injury" requirement in § 157(b)(5), while including it in another provision of the Bankruptcy Code, as evidence of congressional intent: "In drafting section 522(d)(11) of the Bankruptcy Code Congress referred to 'personal *bodily* injury' (emphasis supplied) and, presumably would have used the same language in section 157(b)(5) had it intended to limit that section to torts involving bodily injury." Ex. 1 (Op.) at 7; *accord Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002) ("Congress knew how to say 'personal *bodily* injury' when it wanted.") (quoting 11 U.S.C. § 522(d)(11)(D)); *Boyer*, 93 B.R. at 318 ("the Code [is] silent on any repudiation or limitation of" the ordinary, broad definition of "personal injury tort," which is not limited to bodily harm); *Von Volkmar I*, 217 B.R. at 566 ("Certainly Congress could have used the term 'personal *bodily* injury' if it wished to specifically limit personal injury tort claims."). It is a maxim of statutory interpretation that "[t]he use of different terms within related statutes generally implies that different meanings were intended." *Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001) (quotation marks omitted).

Moreover, the term "personal injury" elsewhere in the Bankruptcy Code has been construed "to include non-bodily injury." *Longhenry v. Wyatt (In re Longhenry)*, 246 B.R. 234, 237, 239 (Bankr. D. Md. 2000) (interpreting "personal injury" under 11 U.S.C. § 523(a)(9)). "[D]oubt as to the meaning of [a] term . . . [may be] removed when one considers how the same term is used elsewhere in the Bankruptcy Code." *Velis v. Kardanis*, 949 F.2d 78, 81 (3d Cir. 1991); *see also Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005) ("[U]nder a longstanding canon of interpretation,

adjacent statutory subsections that refer to the same subject matter . . . must be read *in pari materia*.").

The definition of personal injury applied by the Bankruptcy Court also comports with the Congressional intent behind § 157(b): to eliminate bankruptcy court jurisdiction over "claimants [who] [did] not voluntarily associate themselves with the debtor, [unlike] contracting parties." *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377–78 nn.3 & 4 (Bankr. S.D. Tex. 1994) (citing legislative history). The "special status" afforded to personal injury claims "stems from Congress's recognition that most personal injury tort . . . victims stand in a somewhat different relationship with the bankruptcy debtor because they did not voluntarily enter into dealings with the debtor (and accept the risk of loss) in the same sense as traditional bankruptcy claimants." *Von Volkmar I*, 217 B.R. at 565 (quotation marks omitted).

The Bankruptcy Court thus joined the great majority of courts in holding that the Bankruptcy Code requires district court adjudication of claims involving violations of personal rights, and that personal injury claims are *not* narrowly limited to claims that require bodily harm or severe emotional distress as "an essential element." Ex. 1 (Op.) at 7). *See, e.g.*, *Moore*, 358 B.R. at 252 (race discrimination); *Nosek v. Ameriquest Mortg. Co. (In re Nosek)*, No. 02-46025-JBR, 2006 WL 1867096, at *17 (Bankr. D. Mass. June 30, 2006) (IIED); *Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) (employment discrimination); *Passialis*, 292 B.R. at 352 (malicious prosecution); *Ice Cream*, 281 B.R. at 160 (sexual harassment); *Leathem v. Von Volkmar (In re Von Volkmar) (Von Volkmar II)*, 218 B.R. 890, 894 (Bankr. N.D. Ill. 1998) (IIED and malicious prosecution); *Von Volkmar I*, 217 B.R. at 565 (IIED and malicious prosecution); *Thomas*, 211 B.R. at 840–41 (IIED and sexual harassment); *Thomas v.*

*Adams (In re Gary Brew Enters. Ltd.)*, 198 B.R. 616, 618 (Bankr. S.D. Cal. 1996) (race discrimination); *Hansen*, 164 B.R. at 486 (race discrimination); *Patterson v. Williamson ("Patterson II")*, 153 B.R. 32, 33 (E.D. Va. 1993) (unspecified civil rights violation not involving bodily harm); *Patterson v. Williamson (In re Patterson) ("Patterson I")*, 150 B.R. 367, 368 (E.D. Va. 1993) (same); *Boyer*, 93 B.R. at 317 (due process violation); *Smith v. N.Y. State Higher Educ. Servs. Corp. (In re Smith)*, 95 B.R. 286 (Bankr. N.D.N.Y. 1988) (due process violation); *Anthony v. Baker (In re Baker)*, 86 B.R. 234, 236 (D. Colo. 1988) (malicious prosecution); *Baggott v. Piper Aircraft Corp.*, 70 B.R. 223, 227 (S.D. Ohio 1986) (indemnification claim involving product liability issues).

On appeal, Nifong ignores most of these cases contradicting his position. He attempts to distinguish *Von Volkmar II*, but his effort fails for several reasons. First, Nifong incorrectly argues that the decision in *Von Volkmar II* turned on statute of limitations grounds. *See* Nifong Br. at 11. To the contrary, *Von Volkmar II* squarely held that "Plaintiff's complaint must be withdrawn to the District Court . . . *under § 157(b)(5)*," and that "Illinois case law relating to its various statutes of limitations *is inapposite* to the federal subject matter jurisdictional limits drawn by § 157(b)(5)." 218 B.R. at 895 (emphasis added). Second, Nifong argues that the claims in *Von Volkmar II* "were all premised on Illinois state law." Nifong Br. at 10. But the *Von Volkmar II* court never held that federal civil rights claims would be treated differently than state-law claims, and here Plaintiffs are also asserting the very same state-law malicious prosecution and IIED claims as the *Von Volkmar II* plaintiff, simply under North Carolina law. *See* 218 B.R. at 894; Ex. 4 (Am. Compl.). Third, Nifong contends that *Von Volkmar II* is a domestic relations case, and that "federal courts have . . . tried diligently to keep their distance from domestic relations." Nifong Br. at 11. But the holding in *Von*

*Volkmar II* was not based on domestic relations, and far from distancing the case from federal court, *Von Volkmar II* held that the "Plaintiff's complaint must be withdrawn *to the District Court*"—another federal court. 218 B.R. at 895 (emphasis added). Finally, Nifong offers no explanation for his contention that "the fact situation [of *Von Volkmar I* and *Von Volkmar II*] . . . are [sic] too bizarre to serve as precedent for anything." Nifong Br. at 10. To the contrary, this argument is refuted by the fact that federal courts have repeatedly cited the *Von Volkmar* cases as precedent. *See McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172, 1179 n.9 (9th Cir. 2002) (citing *Von Volkmar II*); *Ice Cream*, 281 B.R. at 160 (citing *Von Volkmar I*); *Passialis*, 292 B.R. at 352 (citing *Von Volkmar I*); *In re Washington*, No. 03-43611, 2007 WL 3376235, at *1 (Bankr. E.D. Tex. Nov. 8, 2007) (citing *Von Volkmar II*); Ex. 1 (Op.) at 4 (citing *Von Volkmar I*).

Here, Plaintiffs' claims are for "civil wrongs or injuries" and seek recovery for "damage to an individual's person and . . . invasion of personal rights, such as . . . mental suffering." *E.g.*, *Hansen*, 164 B.R. at 486 (quotation marks omitted). Plaintiffs "did not voluntarily enter into dealings" with Nifong, nor do their claims relate to some commercial, business, or property dispute with Nifong. Plaintiffs' claims therefore are personal injury claims under § 157(b). Moreover, as discussed in the next section, the particular federal civil rights claims against Nifong have been held by numerous courts to be personal injury claims under § 157(b).

### 1. Plaintiffs' Federal Civil Rights Claims Against Nifong (Causes of Action 1–4 and 7–10) Are Personal Injury Claims.

In *Wilson v. Garcia*, 471 U.S. 261 (1985), the United States Supreme Court held that "§ 1983 claims are best characterized as personal injury actions." *Id*. at 280. The Supreme Court explained that § 1983 claims are "more analogous to [state] tort claims

for personal injury than, for example, to claims for damages to property or breach of contract." *Id*. at 277.

> The unifying theme of the Civil Rights Act of 1871 is [the right] . . . of every "*person*" subject to the jurisdiction of any of the several States. The Constitution's command is that all "*persons*" shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

*Id*. at 277 (emphasis in original) (footnote omitted). Similarly, in *Almond v. Kent*, 459 F.2d 200 (4th Cir. 1972), the Fourth Circuit held that "every cause of action under § 1983 . . . results from 'personal injuries.'" *Id.* at 204.

The precise issue in both *Wilson* and *Almond* was whether § 1983 claims were subject to the statute of limitations for "personal injury" claims. However, the holdings in both cases have been viewed as "[b]inding precedent . . . that . . . civil rights claims should be treated as personal injury tort claims" under § 157(b). *Moore*, 358 B.R. at 250. Indeed, as the U.S. District Court for the Eastern District of North Carolina explained in 2006, there is "no reason why the analysis [of *Wilson* and *Almond*] does not equally apply to whether these causes of action should be characterized as personal injury tort claims for purposes of section 157." *Id*. at 251–52. "It would be a strange anomaly to adopt the personal injury tort statute of limitations for civil rights actions and then hold such term under § 157(b)(2)(B) means something altogether different when non-core jurisdiction is at issue." *Id*. at 251 (quotation marks omitted); *see also, e.g.*, *Boyer*, 93 B.R. at 317–18 (applying *Wilson* and *Almond* under § 157(b)); *Gary Brew*, 198 B.R. at 618 (same); *Hansen*, 164 B.R. at 486 (applying *Wilson* under § 157(b)).

- 15 -

Consistent with *Wilson* and *Almond*, numerous courts have held that federal civil rights claims are personal injury claims within the meaning of § 157(b). "[C]ivil rights claims . . . constitute 'personal injury tort claims' under section 157." *Moore*, 358 B.R. at 250. A § 1983 "action is not a core proceeding which the bankruptcy court may determine. Moreover, [it] is not a non-core proceeding that the bankruptcy court may hear under 28 U.S.C. § 157(c)(1). Congress has mandated trial in the district court." *Patterson I*, 150 B.R. at 368 (citation omitted); *see also Patterson II*, 153 B.R. at 33 ("[T]he bankruptcy court was without jurisdiction to rule on the discovery matters, as those matters pertained to a non-core proceeding arising under 42 U.S.C. § 1983."); *Gary Brew*, 198 B.R. at 620 (§ 1981 claims are personal injury claims under § 157(b)); *Hansen*, 164 B.R. at 486 (§ 1983 claims are personal injury claims under § 157(b)); *Smith*, 95 B.R. at 290–91 ("Actions . . . seeking relief under 42 U.S.C. § 1983 . . . are . . . personal injury claims" that "must be addressed to and heard in the district court."); *Boyer*, 93 B.R. at 318 ("The Court must conclude that it has no jurisdiction to hear and determine causes of action . . . arising solely under the provisions of Title 42," including claims "under §§ 1983 and 1985.").

Nifong's attempts to distinguish these cases are unsuccessful. Nifong argues that the decision in *Gary Brew* was "grounded . . . entirely on three statute of limitations cases." Nifong Br. at 13. To the contrary, *Gary Brew* also relied on case law that considered the text and legislative history of § 157(b) and related sections of the Bankruptcy Code. *See Gary Brew*, 198 B.R. at 618 (citing seven decisions under § 157(b)). Nifong also attempts to distinguish *Boyer* and *Smith* by contending that "the civil rights claims . . . arose from post-petition events." Nifong Br. at 6. That is also inaccurate. In *Boyer*, the plaintiff alleged civil rights violations *both* "pre and post-

petition." *Boyer*, 93 B.R. at 315. Moreover, the timing of the alleged violations in *Boyer* and *Smith* was irrelevant to their holdings that federal civil rights claims are personal injury claims under § 157(b) (*see Boyer*, 93 B.R. at 318; *Smith*, 95 B.R. at 290–91); rather, the post-petition violations were relevant to an altogether different issue: so-called "arising under" jurisdiction. *See Boyer*, 93 B.R. at 316–17; *Smith*, 95 B.R. at 290. Last, *Demery v. City of Youngstown*, 818 F.2d 1257 (6th Cir. 1997), which Nifong cites and tries to distinguish (*see* Nifong Br. at 7), is simply one of many cases holding that the "personal injury" statute of limitations applies to other federal civil rights claims in addition to § 1983 claims. Although Plaintiffs have never cited or relied upon *Demery*, it is yet another decision that supports the Bankruptcy Court's holding that Plaintiffs' § 1985 claims, like their § 1983 claims, are personal injury claims.[7]

The Bankruptcy Court correctly ruled that Plaintiffs' federal civil rights claims are personal injury claims within the meaning of § 157(b). The Order should be affirmed.

### C. Plaintiffs' Claims Are "Personal Injury Claims" Even Under the Minority Rule.

Even under the minority view, Plaintiffs' claims would be considered personal injury claims. All but one of the cases upon which Nifong relies hold that claims alleging either bodily harm or severe emotional distress are personal injury claims under § 157(b). *See Cohen*, 107 B.R. at 455 ("[P]ersonal injury tort" encompasses injuries "such as a slip

---

[7]     *Stokes v. Southeast Hotel Properties, Ltd.*, 877 F. Supp. 986 (W.D.N.C. 1994), cited by Nifong, gives him no aid. *Stokes* did not decide whether claims were personal injury claims under § 157(b). *Stokes* merely mentioned, by way of background, that the bankruptcy court had lifted the automatic stay so that a claim for loss of consortium, which it deemed a personal injury claim, could be adjudicated in the district court, which has exclusive jurisdiction over such claims. *See id.* at 991. If anything, *Stokes* supports affirming the Bankruptcy Court's Order.

and fall, or a psychiatric impairment beyond mere shame and humiliation.") (quotation marks omitted); *In re Atron Inc.*, 172 B.R. 541, 544 (Bankr. W.D. Mich. 1994) ("Claimant's pleadings . . . contain [no] allegation or suggestion that his 'humilation and emotional distress' are so severe that they rise to the level of a personal injury tort."); *Priest v. Interco, Inc. (In re Interco, Inc.)*, 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991) ("'[A] mental distress claim'" would divest the bankruptcy court of jurisdiction under § 157(b)(5) if it were "the gravamen of a complaint.") (quoting *Bertholet v. Harman (In re Bertholet)*, 126 B.R. 413, 416 (Bankr. D.N.H. 1991)); *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) (personal injury tort requires "trauma or bodily injury");[8] *Grimes v. First-Citizens Bank & Trust Co. (In re Grimes)*, 388 B.R. 195, 199 (Bankr. N.D.W. Va. 2008) (finding bankruptcy court jurisdiction appropriate where "[n]o stand alone cause of action was alleged for . . . emotional distress"). The outlier, *Massey Energy Co. v. West Virginia Consumers for Justice*, 351 B.R. 348 (E.D. Va. 2006), limited personal injury torts to those alleging "physical injury." *Id.* at 351.[9]

---

[8]    "Trauma" includes "psychological injury or pain." *Webster's Unabridged Dictionary* 2014 (Random House 2d ed. 2001); *see also* 18 *Oxford English Dictionary* 441 (2d ed. 2001) (defining "trauma" to include "[a] psychic injury, esp. one caused by emotional shock").

[9]    Emotional distress was not an issue in *Massey*, which involved only claims of harm to "business reputation." 351 B.R. at 351. *Massey*'s short analysis does not discuss the majority view or acknowledge that the minority decisions recognize severe emotional distress as personal injury. Instead, the court reasoned that because the term "personal injury" is narrower than the term "tort," it must follow that "personal injury" claims are limited to those torts involving allegations of "*physical* injury." *Id.* at 351 (emphasis added). Presumably, this conclusion rested on the absence of allegations of emotional distress or other types of personal injury. Otherwise, it would be logically flawed, akin to reasoning that because the term "ducks" is narrower than the term "birds," "ducks" must be limited only to those birds that are "mallards." Regardless, because Plaintiffs allege physical harm here, *Massey* would not alter the outcome.

Here, because Plaintiffs have alleged physical harm and severe emotional distress, their claims would be considered personal injury claims even under these minority decisions.  Nifong and his co-defendants caused Plaintiffs to be physically seized in the absence of probable cause and to live for a year under constant apprehension of being wrongly convicted and sentenced to prison terms of thirty years or more on false charges of rape, first-degree sexual assault, and kidnapping.  *See* Ex. 4 (Am. Compl.) ¶¶ 212–13, 238.  They branded Plaintiffs "as violent criminals and racists in the minds of hundreds of millions" of people.  *Id*. ¶ 513.  Indeed, they willingly turned Plaintiffs "into public pariahs, subjecting them to extreme and sustained public obloquy, causing them to endure death threats, taunts, and insults, and subjecting them to assaults by the local, national, and international media."  *Id*. ¶ 514.  Not surprisingly, as a result of Nifong's and the other defendants' actions, Plaintiffs suffered physical harm as well as severe distress "from emotional and mental conditions generally recognized and diagnosed by trained professionals."  *Id*. ¶¶ 516–17.  In short, Plaintiffs allege far more than "mere shame and humiliation."  *See, e.g.*, *Von Volkmar II*, 218 B.R. at 896 ("The Court can think of few things more traumatic than the stress emanating from being . . . falsely accused of sexually molesting a child.") (quotation marks omitted); *id*. at 894 ("Certainly . . . the stress and anxiety of the State of Illinois Department of Children and Family Services and Police investigations . . . are beyond mere humiliation.") (brackets, quotation marks, and citations omitted).  Plaintiffs also assert stand-alone IIED claims.  *See* Ex. 4 (Am. Compl.), Cause of Action 15.  "When [IIED] stands alone as a separate and independent cause of action, the [bankruptcy] Court is without jurisdiction under 28 U.S.C. § 157(b)(5)."  *Nosek*, 2006 WL 1867096, at *17; *accord In re Interco, Inc.*, 135 B.R. at 362

("'[A] mental distress claim'" divests the bankruptcy court of jurisdiction under §

157(b)(5).) (quoting *In re Bertholet*, 126 B.R. at 416).

Nifong appears to recognize that Plaintiffs' allegations of harm provide an

independent basis to affirm the Bankruptcy Court's Order, because he urges this Court

simply to disbelieve them. Nifong argues that the Bankruptcy Court was "taken in by the

lacrosse players' allegations of bodily injury," that "it never happened," and that "we

should not expect a court to take such allegations seriously." Nifong Br. at 15–16.

Plaintiffs cannot speak to the breeding patterns of hippopotami, *see id.* at 16, but they

stand by their allegations of the harms they suffered because of Nifong and his

co-defendants. At this stage, those allegations are accepted as true, and all of the case

law—including the decisions cited by Nifong—looks to the allegations of a complaint,

not a defendant's self-serving expressions of disbelief, to determine if the claims are

considered personal injury claims under § 157(b). *See, e.g., Moore*, 358 B.R. at 250.[10]

Nifong is also wrong to imply that the Bankruptcy Court's ruling turned only on

the allegations of physical harm. The Bankruptcy Court expressly held that personal

injury torts are "*not* limited to 'traditional' torts in which the plaintiff has received

physical trauma," and noted that Plaintiffs alleged that they "suffered . . . emotional

trauma" in addition to "physical harm." Ex. 1 (Op.) at 6 (emphasis added). Moreover,

the Bankruptcy Court's holding was based on its conclusion that "claims under section

1983 are personal injury torts for purposes of section 157(b)(5), and that this court

therefore lacks jurisdiction to adjudicate and liquidate those claims." *Id.* at 10.

---

[10]     Nifong cannot argue that Plaintiffs pleaded these allegations in an attempt to
defeat bankruptcy court jurisdiction. Plaintiffs filed their complaint in October 2007.
Nifong did not file for bankruptcy until January 2008.

The Order should be affirmed.

## II.  Independent Grounds Support the Decision Below.

This Court may affirm the Bankruptcy Court's Order "on the basis of any ground supported by the record even if it is not the basis relied upon by the" Bankruptcy Court. *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660 (4th Cir. 2004) (quotation marks omitted); *accord Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008). Here, although the Bankruptcy Court correctly concluded that Plaintiffs' federal civil rights claims are personal injury torts, there are three additional independent grounds for affirming the Order on appeal:

### A.  Plaintiffs' State-Law Claims (Causes of Action 13–15) Are Personal Injury Claims and Must Be Heard in District Court Under § 157(b).

The types of state-law claims that Plaintiffs have alleged against Nifong are personal injury claims under § 157(b).  For example, it is well-settled that state-law malicious prosecution claims (such as Cause of Action 13) "seek recovery for personal injuries [under § 157(b)] and cannot be liquidated or tried by this [Bankruptcy] Court." *Von Volkmar I*, 217 B.R. at 566–67; *see also Passialis*, 292 B.R. at 352 ("[T]he term 'personal injury' [in § 157(b)] . . . may encompass . . . malicious prosecution."); *Baker*, 86 B.R. at 236 ("[M]alicious prosecution . . . obviously [is] . . . a personal injury tort."). Similarly, an IIED claim (Cause of Action 15) "fits within the definition of personal injury tort for purposes of § 157(b)(5)." *Thomas*, 211 B.R. at 841–42. "When [IIED] stands alone as a separate and independent cause of action, the [Bankruptcy] Court is without jurisdiction under 28 U.S.C. § 157(b)(5)." *Nosek*, 2006 WL 1867096, at *17; *see also Schepps*, 169 B.R. at 376 (IIED is a personal injury claim under § 157(b)); *von Volkmar I*, 217 B.R. at 566–67 (same); *Black's Law Dictionary* 802 (8th ed. 2004) (Personal injury "includ[es] mental suffering.").

North Carolina courts have long recognized that malicious prosecution and IIED are personal injury claims under North Carolina law. As early as 1840, the North Carolina Supreme Court referred to "malicious prosecution *or any other* personal injury." *Minga v. Zollicoffer*, 23 N.C. 278 (N.C. 1840), *available at* 1840 WL 764, at *2. And as recently as 2002, the North Carolina Court of Appeals recognized that IIED is "a common law tort action *alleging personal injury*." *Guthrie*, 567 S.E.2d at 408 (emphasis added); *see also Hugger v. Rutherford Inst.*, No. 5:00CV180-H, 2001 WL 114397, at *1 (W.D.N.C. Jan. 18, 2001) ("This is a personal injury action [for] intentional infliction of emotional distress."), *aff'd*, 63 F. App'x 683 (4th Cir. 2003) (per curiam); *Watson v. Dixon*, 532 S.E.2d 175, 177 (N.C. 2000) (referring to "personal injury as a result of the intentional infliction of emotional distress").

Consistent with the ordinary meaning of "personal injury," North Carolina insurance policies typically define the term to include malicious prosecution and IIED. *See, e.g.*, *Morgan*, 556 S.E.2d at 29 ("'[P]ersonal injury' [includes] . . . mental anguish and mental injury [and] [f]alse arrest [and] malicious prosecution."); *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 477 S.E.2d 59, 66 (N.C. Ct. App. 1996) ("'Personal injury' means . . . false arrest . . . or malicious prosecution."); *Graham v. James F. Jackson Assocs., Inc.*, 352 S.E.2d 878, 880 (N.C. Ct. App. 1987) ("Personal injury means . . . false arrest [or] malicious prosecution."); *Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 778 (N.C. Ct. App. 1984) ("'Personal injury' means . . . [f]alse arrest . . . [or] malicious prosecution [or] mental anguish and mental injury.").

Plaintiffs are not aware of any decision on the question of whether the civil tort of obstruction of justice (Cause of Action 14) is considered a personal injury claim under § 157(b) or North Carolina law. Very few decisions exist on any issue involving the

obstruction tort, for that matter. Nevertheless, there is no reason to treat this claim differently under § 157(b) than the closely-related torts of malicious prosecution and false arrest, especially where, as here, they implicate the same conduct and injuries. Moreover, under either the majority or minority views described *supra*, Plaintiffs' obstruction claim plainly meets the requirements of a personal injury tort.

Because Plaintiffs' state-law claims also are personal injury claims and, thus, must be decided in the District Court under § 157(b)(5), the Order lifting the automatic stay may be affirmed on this basis as well. *See* Ex. 1 (Op.) at 12 ("[I]t is clear that all of the claims should be tried in the same case in the same court in the interest of judicial economy and to avoid an unnecessary and undue burden on the parties.").

**B.      Plaintiffs' Civil Rights Claims Require Consideration of "Other Laws of the United States" and Must Be Heard in District Court Under § 157(d).**

Another independent ground for affirming the Bankruptcy Court's Order is the fact that 28 U.S.C. § 157(d) requires district court adjudication where "resolution of the proceeding requires consideration of both title 11 *and other laws of the United States* regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Civil rights claims, in particular, have been held to trigger mandatory withdrawal of reference under § 157(d). *See Walton v. AG Credit, ACA (In re Walton)*, 158 B.R. 939, 942 (Bankr. N.D. Ohio 1993) ("Debtors' civil rights action is subject to mandatory withdrawal of reference to the District Court under 28 U.S.C. § 157(d)."); *Baker*, 86 B.R. at 238 ("[R]esolution of the plaintiff's [non-dischargeability] claims . . . will require substantial consideration of both 11 U.S.C. § 523(a)(6) and 42 U.S.C. § 1983. Thus withdrawal of reference is mandatory under 28 U.S.C. § 157(d)."). Moreover, as this Court has previously observed, the legislative history of § 157(d)

makes clear that Congress intended for cases involving "both title 11 issues and other Federal laws *including . . . civil rights laws*" to be heard in the District Court. *Contemporary Lithographers, Inc. v. Hibbert (In re Contemporary Lithographers, Inc.)*, 127 B.R. 122, 125 (M.D.N.C. 1991) (emphasis added) (quotation marks omitted) (withdrawing the reference). Accordingly, the Bankruptcy Court's Order requiring Plaintiffs' claims to be adjudicated in the District Court may be affirmed for this independent reason.[11]

C. **There Is "Cause" To Lift the Automatic Stay Under 11 U.S.C. § 362(d).**

The Bankruptcy Court's Order also may be affirmed because it is supported by "cause" to lift the automatic stay under 11 U.S.C. § 362(d). The Fourth Circuit has held that, under § 362(d), "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992) (quotation marks omitted). Courts in this Circuit routinely lift the automatic stay under § 362(d) so that litigation can proceed in its original forum, regardless of whether the bankruptcy court would have jurisdiction. *See In re Meredith*, 337 B.R. 574 (Bankr. E.D. Va. 2005) (granting relief from the automatic stay so other action could proceed), *aff'd*, 2005 U.S. Dist. LEXIS 40242 (E.D. Va. Aug. 19, 2005); *Ewald v. Nat'l City Mortg. Co. (In re Ewald)*, 298 B.R. 76 (Bankr. E.D. Va.

---

[11] Plaintiffs have not filed a motion asking the District Court to withdraw the reference because such a motion would have been duplicative of the Lift-Stay Motion and sought the same relief that the Bankruptcy Court has granted. Plaintiffs reserve the right to move for withdrawal of the reference if necessary to secure their right to a jury trial in the District Court on their claims.

2002) (granting relief from automatic stay so other action could proceed); *Young v. Young*, No. 1:06CV00781, 2007 WL 676689, at *3 (M.D.N.C. Feb. 28, 2007) (affirming relief from automatic stay so that other action could proceed), *aff'd*, 273 F. App'x 220 (4th Cir. 2008) (per curiam); *In re Allred*, No. 03-11315C-13G, 2004 WL 3502655, at *4 (Bankr. M.D.N.C. Feb. 26, 2004) (granting relief from automatic stay so that other action could proceed); *In re Roberts*, No. 01-81072, 2001 WL 1699604, at *2 (Bankr. M.D.N.C. Aug. 1, 2001) (same).

To determine if "cause" exists to lift the automatic stay, a "court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345. Nifong bears the burden of persuading the Court that no cause exists to lift the automatic stay. *See* 11 U.S.C. § 362(g)(2). He has not met that burden.

### 1. Lifting the Automatic Stay Cannot Prejudice Nifong's Estate.

Lifting the automatic stay cannot "prejudice . . . the bankruptcy debtor's estate" here because Plaintiffs do not seek recovery from Nifong's estate. *Robbins*, 964 F.2d at 345. Plaintiffs have informed the Bankruptcy Court and the bankruptcy trustee that, as far as Plaintiffs are concerned, Nifong's claimed $3,589 estate can be distributed now to other creditors. Plaintiffs will satisfy any District Court judgment from non-estate assets, including insurance proceeds and, to the extent Nifong's debts are excepted from discharge, post-bankruptcy assets, such as the proceeds of a future book deal.[12] Because Plaintiffs will not recover from the estate, the automatic stay of Plaintiffs' District Court

---

[12]    *Cf.* Fox News, *Duke Lacrosse Rape Accuser to Write Memoir*, Aug. 22, 2008, http://www.foxnews.com/story/0,2933,408881,00.html (reporting on Crystal Mangum's forthcoming book).

claims serves no purpose. "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation." *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir. 1982). Moreover, the Bankruptcy Court's Order will reduce the burden on Nifong because he otherwise would be subject to duplicative depositions, document requests, and trial testimony in both District Court and Bankruptcy Court. *See AOL, Inc. v. CN Prods., Inc.*, 272 B.R. 879, 882 n.6 (E.D. Va. 2002) ("[T]he automatic stay . . . would not operate to preclude [litigants] from obtaining information from [the debtor] pursuant to the rules pertaining to discovery against non-parties."). Therefore, the Bankruptcy Court's Order lifting the automatic stay as to Plaintiffs' District Court claims cannot prejudice the estate.

### 2. The Automatic Stay Would Have Severely Prejudiced Plaintiffs.

On the other side of the balance, the automatic stay would have substantially burdened Plaintiffs. The District Court will be resolving many complex issues arising under 42 U.S.C. §§ 1983 and 1985 in connection with Nifong's fifteen co-defendants, and the District Court would be overseeing discovery and a trial that involves Nifong's conduct, even if Nifong were not a party here. If the automatic stay had not been lifted, there would have been a second set of proceedings and a second trial in the Bankruptcy Court, wholly duplicative of the District Court action, to decide separately the same legal and factual issues that will be decided in the District Court action, thereby forcing Plaintiffs—the victims of Nifong's and his co-conspirators' misconduct—to incur substantial additional costs and the risk of potentially inconsistent outcomes. *See Meredith,* 337 B.R. at 579 (granting relief from automatic stay because of "the possibility of disparate results" in the bankruptcy and non-bankruptcy forums).

The Bankruptcy Court's Order will streamline the future proceedings in Bankruptcy Court. The District Court's judgment will have collateral estoppel effect, enabling the Bankruptcy Court to decide as a matter of law, without discovery or trial, whether Nifong's debts to Plaintiffs are non-dischargeable under 11 U.S.C. § 523(a)(6). *See, e.g.*, *Cudmore v. Howell*, 232 B.R. 335, 340 (E.D.N.C. 1999) ("Because collateral estoppel bars the bankruptcy court from relitigating the issue of [the debtor's] actions, the debt is not dischargeable."). It also will permit Nifong's debts to Plaintiffs to be liquidated in the District Court proceeding, along with those of the other defendants (who are jointly and severally liable for Plaintiffs' damages), so that Plaintiffs may collect sums certain from Nifong's post-bankruptcy income. *See In re Linville*, No. 04-52886C7W, 2005 WL 1289373, at *3 (Bankr. M.D.N.C. Feb. 1, 2005) (granting relief from the automatic stay to permit another action to proceed to liquidate a tort claim that might be excepted from discharge under § 523(a)).

Nifong references three factors that he contends are relevant to the question of whether to lift the automatic stay as to pending state-court litigation in "asset" bankruptcy cases:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins*, 964 F.2d at 345 (cited in Nifong Br. at 16–17). As an initial matter, it is not clear whether these factors even apply here, where the underlying case is in federal court

and the claimed estate is insubstantial. But even if they did, all of them would support

lifting the automatic stay. First, bankruptcy court expertise is unnecessary to adjudicate

Plaintiffs' federal civil rights and North Carolina intentional tort claims. Second,

adjudicating the claims against Nifong and his co-defendants in one forum will "promote

judicial economy." *Robbins*, 964 F.2d at 345. And, although Nifong asserts that the third

factor "is pretty much a non-issue," Nifong Br. at 17, it strongly favors affirmance here

because the Bankruptcy Court's Order "require[s] that creditors seek enforcement of any

judgment through the bankruptcy court." Ex. 2 (Ord.).

At bottom, the balance of hardships overwhelmingly favors lifting the automatic

stay so that the District Court action may proceed with Nifong as a party. The

Bankruptcy Court's Order therefore is supported by "cause" under 11 U.S.C. § 362(d)

and thus may be affirmed on this independent basis as well.

### III. Nifong's Reference to "Immunity" Has No Relevance to This Appeal.

Nifong cites three cases to forecast an immunity claim that he may later raise. *See*

Nifong Br. at 8–9.[13] At the appropriate time, Plaintiffs will respond to any immunity

claim that Nifong elects to raise. For now, Nifong concedes that these cases are not

relevant to the legal issues in this appeal. *See* Nifong Br. at 8 (calling the cases "[o]f

ancillary interest").

---

[13] It is hard to imagine how these cases might help him. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (holding that a city lacked immunity); *Goldstein v. City of Long Beach*, 481 F.3d 1170, 1175 (9th Cir. 2007) (holding that a prosecutor lacked immunity for improper training and supervision of subordinate prosecutors), *cert. granted*, 128 S. Ct. 1872 (2008); *Dunton v. County of Suffolk*, 729 F.2d 903, 910 (2d Cir. 1984) (granting habeas relief where a prisoner's lawyer had a conflict of interest).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order should be affirmed.


Dated:   September 15, 2008                    Respectfully submitted,

                                               **WILLIAMS & CONNOLLY LLP**


                                               By:   ___/s/ Charles Davant IV_____
                                                       Charles Davant IV (N.C. Bar #28489)
                                                       725 Twelfth Street, N.W.
                                                       Washington, D.C.  20005
                                                       Telephone:   (202) 434-5000
                                                       E-mail:         cdavant@wc.com

                                               *Attorney for Plaintiffs*
                                                 *David F. Evans and Collin Finnerty*


                                                              -and-


                                               **RUDOLF WIDENHOUSE & FIALKO**


                                               By:   ___/s/ David S. Rudolf_____
                                                       David S. Rudolf (N.C. Bar #8587)
                                                       312 West Franklin Street
                                                       Chapel Hill, NC  27516
                                                       Telephone:   (919) 967-4900
                                                       E-mail:         dsrudolf@rwf-law.com


                                               *Attorney for Plaintiff Reade Seligmann*

In re Michael B. Nifong,

        Debtor.

Case No. 08-00441-JAB

## CERTIFICATE OF SERVICE

      I hereby certify that on September 15, 2008, I electronically filed the foregoing and any attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| James B. Craven III | Michael D. West | Sara A. Conti |
|---|---|---|
| 340 West Main Street | Bankruptcy Administrator | Trustee |
| P.O. Box 1366 | P.O. Box 1828 | P.O. Box 939 |
| Durham, NC  27702 | Greensboro, NC  27402 | Carrboro, NC  27510 |

*Attorney for*
*Michael B. Nifong*

                        Respectfully submitted,

                        s/ Charles Davant IV
                        Charles Davant IV (N.C. Bar No. 28489)
                        WILLIAMS & CONNOLLY LLP
                        725 Twelfth Street, N.W.
                        Washington, DC  20005
                        (202) 434-5000 (tel.)
                        (202) 434-5029 (fax)
                        cdavant@wc.com

                        *Attorney for Plaintiffs David F. Evans and*
                          *Collin Finnerty*